John McGANN, Plaintiff–Appellant,

v.

H & H MUSIC COMPANY, et al., Defendants–Appellees.

No. 90–2672.

United States Court of Appeals, Fifth Circuit.

Nov. 4, 1991.

Joseph J. Garcia, New York City, Helen Brattin, Donald L. Skipwith, Houston, Tex., Paula Ettelbrick, Thomas B. Stoddard, New York City, for John McGann.

Robert L. Liebrose, Atty., AARP, Washington, D.C., for amicus-AARP.

Mark A. Huvard, Harberg, Huvard & Bisk, Houston, Tex., for H & H Music Co., and Brook Mays Music Co.

Mary H. Smith, Richard M. Law, Scott M. Owen, Dunn, Kacal, Adams, Papas & Law, Houston, Tex., for General American Life Ins.

Before GARWOOD, JONES, and BARKSDALE, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant John McGann (McGann) filed this suit under section 510 of the Employee Retirement Income Security Act of 1974, Pub.L. No. 93–406, 88 Stat. 832 (29 U.S.C. §§ 1001–1461) (ERISA), against defendants-appellees H & H Music Company (H & H Music), Brook Mays Music Company (Brook Mays) and General American Life Insurance Company (General American) (collectively defendants) claiming that they discriminated against McGann, an employee of H & H Music, by reducing benefits available to H & H Music's group medical plan beneficiaries for treatment for acquired immune deficiency syndrome (AIDS) and related illnesses. The district court granted defendants' motion for summary judgment on the ground that an employer has an absolute right to alter the terms of medical coverage available to plan beneficiaries. 742 F.Supp. 392. We affirm.

## FACTS AND PROCEEDINGS BELOW

McGann, an employee of H & H Music, discovered that he was afflicted with AIDS in December 1987. Soon thereafter, McGann submitted his first claims for reimbursement under H & H Music's group medical plan, provided through Brook Mays, the plan administrator, and issued by General American, the plan insurer, and informed his employer that he had AIDS. McGann met with officials of H & H Music

in March 1988, at which time they discussed McGann's illness. Before the change in the terms of the plan, it provided for lifetime medical benefits of up to $1,000,000 to all employees.

In July 1988, H & H Music informed its employees that, effective August 1, 1988, changes would be made in their medical coverage. These changes included, but were not limited to, limitation of benefits payable for AIDS-related claims to a lifetime maximum of $5,000.[1] No limitation was placed on any other catastrophic illness. H & H Music became self-insured under the new plan and General American became the plan's administrator. By January 1990, McGann had exhausted the $5,000 limit on coverage for his illness.

In August 1989, McGann sued H & H Music, Brook Mays and General American under section 510 of ERISA, which provides, in part, as follows:

"It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan ..." 29 U.S.C. § 1140.

McGann claimed that defendants discriminated against him in violation of both prohibitions of section 510.[2] He claimed that the provision limiting coverage for AIDS-related expenses was directed specifically at him in retaliation for exercising his rights under the medical plan and for the purpose of interfering with his attainment of a right to which he may become entitled under the plan.

Defendants, conceding the factual allegations of McGann's complaint, moved for summary judgment.[3] These factual allega-

---

1. Other changes included increased individual and family deductibles, elimination of coverage for chemical dependency treatment, adoption of a preferred provider plan and increased contribution requirements.

2. McGann also asserted various state law claims which the district court dismissed without dis-

cussion. McGann's brief in this court states that he "does not appeal from that part of the [district] court's order."

3. General American claimed that the district court should have dismissed it as a defendant with respect to McGann's ERISA claim because ERISA does not create a cause of action against

tions include no assertion that the reduction of AIDS benefits was intended to deny benefits to McGann for any reason which would not be applicable to other beneficiaries who might then or thereafter have AIDS, but rather that the reduction was prompted by the knowledge of McGann's illness, and that McGann was the only beneficiary then known to have AIDS.[4] On June 26, 1990, the district court granted defendants' motion on the ground that they had an absolute right to alter the terms of the plan, regardless of their intent in making the alterations. The district court also held that even if the issue of discriminatory motive were relevant, summary judgment would still be proper because the defendants' motive was to ensure the future existence of the plan and not specifically to retaliate against McGann or to interfere with his exercise of future rights under the plan.

## DISCUSSION

■ McGann contends that defendants violated both clauses of section 510 by discriminating against him for two purposes: (1) "for exercising any right to which [the beneficiary] is entitled," and (2) "for the purpose of interfering with the attainment of any right to which such participant may become entitled." In order to preclude summary judgment in defendants' favor, McGann must make a showing sufficient to establish the existence of a genuine issue of material fact with respect to each material element on which he would carry the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ At trial, McGann would bear the burden of proving the existence of defendants' specific discriminatory intent as an essential element of either of his claims. *Kimbro v. Atlantic Richfield Co.*, 889 F.2d

869, 881 (9th Cir.1989) (employee must prove employer's specific intent to retaliate for employee's exercise of rights under plan), *cert. denied,* —— U.S. ——, 111 S.Ct. 53, 112 L.Ed.2d 28 (1990); *Clark v. Resistoflex Co., a Div. of Unidynamics Corp.*, 854 F.2d 762, 770 (5th Cir.1988) (employee must prove specific intent to interfere with employee's pension rights); *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1111 (2d Cir.1988) (section 510 claimant must prove specific intent to engage in activity prohibited by section 510); *Gavalik v. Continental Can Co.*, 812 F.2d 834, 851 (3d Cir.) (claimant must prove specific intent to violate ERISA), *cert. denied,* 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987). Thus, in order to survive summary judgment McGann must make a showing sufficient to establish that a genuine issue exists as to defendants' specific intent to retaliate against McGann for filing claims for AIDS-related treatment or to interfere with McGann's attainment of any right to which he may have become entitled.

■ Although we assume there was a connection between the benefits reduction and either McGann's filing of claims or his revelations about his illness, there is nothing in the record to suggest that defendants' motivation was other than as they asserted, namely to avoid the expense of paying for AIDS treatment (if not, indeed, also for other treatment), no more for McGann than for any other present or future plan beneficiary who might suffer from AIDS. McGann concedes that the reduction in AIDS benefits will apply equally to all employees filing AIDS-related claims and that the effect of the reduction will not necessarily be felt only by him. He fails to allege that the coverage reduction was otherwise specifically intended to deny him particularly medical coverage except "in effect." He does not challenge

---

a nonemployer and McGann has never been employed by General American. Because of our disposition of this appeal on alternative grounds, we do not find it necessary to address this issue.

**4.** We assume, for purposes of this appeal that the defendants' knowledge of McGann's illness

was a motivating factor in their decision to reduce coverage for AIDS-related expenses, that this knowledge was obtained either through McGann's filing of claims or his meetings with defendants, and that McGann was the only plan beneficiary then known to have AIDS.

defendants' assertion that their purpose in reducing AIDS benefits was to reduce costs.

■ Furthermore, McGann has failed to adduce evidence of the existence of "any right to which [he] may become entitled under the plan." The right referred to in the second clause of section 510 is not simply any right to which an employee may conceivably become entitled, but rather any right to which an employee may become entitled pursuant to an existing, enforceable obligation assumed by the employer. "Congress viewed [section 510] as a crucial part of ERISA because, without it, employers would be able to circumvent the provision of *promised* benefits." *Ingersoll–Rand Co. v. McClendon,* — U.S. —, 111 S.Ct. 478, 485, 112 L.Ed.2d 474 (1990) (emphasis added).

McGann's allegations show no *promised* benefit, for there is nothing to indicate that defendants ever promised that the $1,000,-000 coverage limit was permanent. The H & H Music plan expressly provides: "Termination or Amendment of Plan: The Plan Sponsor may terminate or amend the Plan at any time or terminate any benefit under the Plan at any time." There is no allegation or evidence that any oral or written representations were made to McGann that the $1,000,000 coverage limit would never be lowered. Defendants broke no promise to McGann. The continued availability of the $1,000,000 limit was not a right to which McGann may have become entitled for the purposes of section 510.[5] To adopt McGann's contrary construction of this portion of section 510 would mean that an employer could not effectively reserve the right to amend a medical plan to reduce benefits respecting subsequently incurred medical expenses, as H & H Music did

here, because such an amendment would obviously have as a purpose preventing participants from attaining the right to such future benefits as they otherwise might do under the existing plan absent the amendment. But this is plainly not the law, and ERISA does not require such "vesting" of the right to a continued level of the same medical benefits once those are ever included in a welfare plan. *See Moore v. Metropolitan Life Insurance Co.,* 856 F.2d 488, 492 (2d Cir.1988).

McGann appears to contend that the reduction in AIDS benefits alone supports an inference of specific intent to retaliate against him or to interfere with his future exercise of rights under the plan. McGann characterizes as evidence of an individualized intent to discriminate the fact that AIDS was the only catastrophic illness to which the $5,000 limit was applied and the fact that McGann was the only employee known to have AIDS. He contends that if defendants reduced AIDS coverage because they learned of McGann's illness through his exercising of his rights under the plan by filing claims, the coverage reduction therefore could be "retaliation" for McGann's filing of the claims.[6] Under McGann's theory, any reduction in employee benefits would be impermissibly discriminatory if motivated by a desire to avoid the anticipated costs of continuing to provide coverage for a particular beneficiary. McGann would find an implied promise not to discriminate for this purpose; it is the breaking of this promise that McGann appears to contend constitutes interference with a future entitlement.

McGann cites only one case in which a court has ruled that a change in the terms and conditions of an employee-benefits plan could constitute illegal discrimination under section 510.[7] *Vogel v. Independence Fed-*

---

**5.** McGann does not claim that he was not fully reimbursed for all claimed medical expenses incurred on or prior to August 1, 1988; or that the full $5,000 has not been made available to him in respect to AIDS related medical expenses incurred by him on or after July 1, 1988.

**6.** We assume that discovery of McGann's condition—and realization of the attendant, long-term costs of caring for McGann—did in fact prompt defendants to reconsider the $1,000,000 limit

with respect to AIDS-related expenses and to reduce the limit for future such expenses to $5,000.

**7.** Additionally, McGann relies on three cases involving wrongful termination claims brought under section 510. *Fitzgerald v. Codex Corp.,* 882 F.2d 586 (1st Cir.1989); *Kross v. Western Electric Co.,* 701 F.2d 1238 (7th Cir.1983); *Folz v. Marriott Corp.,* 594 F.Supp. 1007 (W.D.Mo. 1984). In none of these cases, however, did the

*eral Sav. Bank,* 728 F.Supp. 1210 (D.Md. 1990). In *Vogel,* however, the plan change at issue resulted in the plaintiff and only the plaintiff being excluded from coverage. McGann asserts that the *Vogel* court rejected the defendant's contention that mere termination of benefits could not constitute unlawful discrimination under section 510, but in fact the court rejected this claim not because it found that mere termination of coverage could constitute discrimination under section 510, but rather because the termination at issue affected only the beneficiary. *Id.* at 1225. Nothing in *Vogel* suggests that the change there had the potential to then or thereafter exclude any present or possible future plan beneficiary other than the plaintiff. *Vogel* therefore provides no support for the proposition that the alteration or termination of a medical plan could alone sustain a section 510 claim. Without necessarily approving of the holding in *Vogel,* we note that it is inapplicable to the instant case. The post-August 1, 1988 $5,000 AIDS coverage limit applies to any and all employees.[8]

McGann effectively contends that section 510 was intended to prohibit any discrimination in the alteration of an employee benefits plan that results in an identifiable employee or group of employees being treated differently from other employees. The First Circuit rejected a somewhat similar contention in *Aronson v. Servus Rubber, Div. of Chromalloy,* 730 F.2d 12 (1st Cir.), *cert. denied,* 469 U.S. 1017, 105 S.Ct. 431, 83 L.Ed.2d 357 (1984). In *Aronson,* an employer eliminated a profit sharing plan with respect to employees at only one of two plants. The disenfranchised employees sued their employer under section 510, claiming that partial termination of the plan with respect to employees at one plant and not at the other constituted illegal discrimination. The court rejected the employees' discrimination claim, stating in part:

> "[Section 510] relates to discriminatory conduct directed against individuals, not to actions involving the plan in general. The problem is with the word 'discriminate.' An overly literal interpretation of this section would make illegal any partial termination, since such terminations obviously interfere with the attainment of benefits by the terminated group, and, indeed, are expressly intended so to interfere.... This is not to say that a plan could not be discriminatorily modified, intentionally benefitting, or injuring, certain identified employees or a certain group of employees, but a partial termination cannot constitute discrimination per se. A termination that cuts along independently established lines—here separate divisions—and that has a readily apparent business justification, demonstrates no invidious intent." *Id.* at 16 (citation omitted).

The Supreme Court has observed in dictum: "ERISA does not mandate that employers provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 2897, 77 L.Ed.2d 490 (1983). *See also Sejman v. Warner–Lambert Co.,* 889 F.2d 1346, 1348–49 (4th Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 43, 112 L.Ed.2d 19 (1990); *Young v. Standard Oil (Indiana),* 849 F.2d 1039, 1045 (7th Cir.), *cert. denied,* 488 U.S. 981, 109 S.Ct. 529, 102 L.Ed.2d 561 (1988); *Phillips v. Amoco Oil Co.,* 799 F.2d 1464, 1471 (11th Cir.1986),

---

employer alter the terms or conditions of the plan at issue. Nor did any one of the three suggest that the changing of the terms of the plan might constitute a violation of section 510.

**8.** As noted, the district court stated as one ground for its decision that an employer has an absolute right to alter the terms of an employee benefits plan, barring contractual provisions to the contrary. *See Deeming v. American Standard, Inc.,* 905 F.2d 1124, 1127 (7th Cir.1990) ("allegation that the employer-employee rela-

tionship, and not merely the pension plan, was changed in some discriminatory or wrongful way" is "a fundamental prerequisite to a § 510 action"); *Owens v. Storehouse, Inc.,* 773 F.Supp. 416, 418 (N.D.Ga.1991) (relying on *Deeming* in rejecting claim that employer violated section 510 by reducing AIDS benefits from $1,000,000 to $25,000 under employee health plan on ground that "§ 510 was designed to protect the 'employment relationship,' not the integrity of specific plans.") We do not find it necessary to decide this question.

*cert. denied,* 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987); *Hamilton v. Travelers Ins. Co.,* 752 F.2d 1350, 1351–52 (8th Cir.1985); *Moore v. Reynolds Metals Co. Retirement Program for Salaried Employees,* 740 F.2d 454, 456 (6th Cir.1984) (*Reynolds Metals*), *cert. denied,* 469 U.S. 1109, 105 S.Ct. 786, 83 L.Ed.2d 780 (1985). To interpret "discrimination" broadly to include defendants' conduct would clearly conflict with Congress's intent that employers remain free to create, modify and terminate the terms and conditions of employee benefits plans without governmental interference.

The Sixth Circuit, in rejecting a challenge to an employer's freedom to choose the terms of its employee pension plan, stated that

> "[i]n enacting ERISA, Congress continued its reliance on *voluntary* action by employers by granting substantial tax advantages for the creation of qualified retirement programs. Neither Congress nor the courts are involved in either the decision to establish a plan or in the decision concerning which benefits a plan should provide. In particular, courts have no authority to decide which benefits employers must confer upon their employees; these are decisions which are more appropriately influenced by forces in the marketplace and, when appropriate, by federal legislation. Absent a violation of federal or state law, a federal court may not modify a substantive provision of a pension plan." *Id.* (citation omitted) (emphasis in original).

The Sixth Circuit has subsequently declared that "the principle articulated in [*Reynolds Metals*] applies with at least as much force to welfare plans ..." *Musto v. American General Corp.,* 861 F.2d 897, 912 (6th Cir.1988), *cert. denied,* 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989).[9]

As persuasively explained by the Second Circuit, the policy of allowing employers freedom to amend or eliminate employee benefits is particularly compelling with respect to medical plans:

> "With regard to an employer's right to change medical plans, Congress evidenced its recognition of the need for flexibility in rejecting the automatic vesting of welfare plans. Automatic vesting was rejected because the costs of such plans are subject to fluctuating and unpredictable variables. Actuarial decisions concerning fixed annuities are based on fairly stable data, and vesting is appropriate. In contrast, medical insurance must take account of inflation, changes in medical practice and technology, and increases in the costs of treatment independent of inflation. These unstable variables prevent accurate predictions of future needs and costs." *Moore v. Metropolitan Life Ins. Co.,* 856 F.2d 488, 492 (2d Cir.1988) (*Metropolitan Life*).

In *Metropolitan Life,* the court rejected an ERISA claim by retirees that their employer could not change the level of their medical benefits without their consent. The court stated that limiting an employer's right to change medical plans increased the risk of "decreas[ing] protection for future employees and retirees." *Id.* at 492; *see also Reynolds Metals,* 740 F.2d at 457 ("judicial interference into the establishment of pension plan provisions ... would serve only to discourage employers from creating voluntarily pension plans") (footnote omitted).

McGann's claim cannot be reconciled with the well-settled principle that Congress did not intend that ERISA circumscribe employers' control over the content of benefits plans they offered to their employees. McGann interprets section 510 to prevent an employer from reducing or eliminating coverage for a particular illness in

---

**9.** *Musto* involved an ERISA claim by retirees that their former employer violated contractual and fiduciary duties by changing the terms of their medical coverage. The court rejected plaintiffs' claim that they had a vested interest in the terms of their medical coverage. *Musto,* like *Reynolds Metals,* noted that "[t]here is a world of difference between administering a welfare plan in accordance with its terms and deciding what those terms are to be. A company acts as a fiduciary in performing the first task, but not the second." *Id.* at 911.

response to the escalating costs of covering an employee suffering from that illness. Such an interpretation would, in effect, change the terms of H & H Music's plan. Instead of making the $1,000,000 limit available for medical expenses on an as-incurred basis only as long as the limit remained in effect, the policy would make the limit *permanently* available for all medical expenses as they might thereafter be incurred because of a single event, such as the contracting of AIDS. Under McGann's theory, defendants would be effectively proscribed from reducing coverage for AIDS once McGann had contracted that illness and filed claims for AIDS-related expenses. If a federal court could prevent an employer from reducing an employee's coverage limits for AIDS treatment once that employee contracted AIDS, the boundaries of judicial involvement in the creation, alteration or termination of ERISA plans would be sorely tested.

■ As noted, McGann has failed to adduce any evidence of defendants' specific intent to engage in conduct proscribed by section 510. A party against whom summary judgment is ordered cannot raise a fact issue simply by stating a cause of action where defendants' state of mind is a material element. *Clark*, 854 F.2d at 771. "'There must be some indication that he can produce the requisite quantum of evidence to enable him to reach the jury with his claim.'" *Id.* at 771 (quoting *Hahn v. Sargent*, 523 F.2d 461, 468 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976)).

■ Proof of defendants' specific intent to discriminate among plan beneficiaries on grounds not proscribed by section 510 does not enable McGann to avoid summary judgment. ERISA does not broadly prevent an employer from "discriminating" in the creation, alteration or termination of employee benefits plans; thus, evidence of such intentional discrimination cannot alone sustain a claim under section 510. That section does not prohibit welfare plan discrimination between or among categories of diseases. Section 510 does not mandate that if some, or most, or

virtually all catastrophic illnesses are covered, AIDS (or any other particular catastrophic illness) must be among them. It does not prohibit an employer from electing not to cover or continue to cover AIDS, while covering or continuing to cover other catastrophic illnesses, even though the employer's decision in this respect may stem from some "prejudice" against AIDS or its victims generally. The same, of course, is true of any other disease and its victims. That sort of "discrimination" is simply not addressed by section 510. Under section 510, the asserted discrimination is illegal only if it is motivated by a desire to retaliate against an employee or to deprive an employee of an existing right to which he may become entitled. The district court's decision to grant summary judgment to defendants therefore was proper. Its judgment is accordingly

AFFIRMED.