Robert Van ZANT, et al.,

v.

**TODD SHIPYARDS CORPORATION**
and Todd Shipyards Corporation
Retirement System.

Civ. A. No. G–93–356.

United States District Court,
S.D. Texas,
Galveston Division.

March 25, 1994.

Ross Citti, pro se.

Gregory B. Enos, Burwell & Enos, Inc., Texas City, TX, for plaintiffs.

Ralph J. Zatzkis, Fisher & Phillips, New Orleans, LA, Joel W. Mohrman, McGlinchey Stafford Lang, Houston, TX, for defendants.

### ORDER GRANTING SUMMARY JUDGMENT

KENT, District Judge.

Before the Court is the Defendants' motion for summary judgment on the Plaintiff's claims under § 510 of the Employee Retirement Income Security Act (ERISA), codified at 29 U.S.C. § 1140.[1] The Defendants also request the Court to award them attorney's fees and other costs of suit. For the reasons stated below, the Defendants' motion for summary judgment is GRANTED, their request for attorney's fees and costs is DENIED, and the Plaintiffs' claims under 29 U.S.C. § 1140 are DISMISSED WITH PREJUDICE.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A fact is material if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists if there is an authentic issue for trial that must be decided by the trier of fact. In other words, summary judgment should not be granted if the evidence indicates that a reasonable fact finder could decide in favor of the nonmoving party. *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In ruling on a motion for summary judgment, the court must accept the evidence of the nonmoving party and draw all justifiable inferences in its favor. Credibility determinations, the weighing of evidence, and the drawing of reasonable inferences are all left to the trier of fact. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once this burden is met, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Leonard v. Dixie Well Serv. & Supply, Inc.,* 828 F.2d 291, 294 (5th Cir.1987).

Where the moving party has met its Rule 56(c) burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' Where the record taken as a whole could not lead a rational

---

1. The Court previously ruled on the Defendants' motion to dismiss, dismissing the Plaintiffs' claims for mental anguish and punitive damages.

trier of fact to find for the nonmoving party, there is no *genuine issue for trial.*" *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1356 (quoting Fed.R.Civ.P. 56(c)) (emphasis in original).

The Plaintiffs worked at the Galveston site of the Defendant Todd Shipyards Corporation, which also had a site in Seattle.[2] The Galveston site was closed in 1990 but the Plaintiffs and others were retained to perform caretaker functions until the site was sold. The Plaintiffs were aware that Todd was attempting to sell the Galveston site and even showed the property to several potential buyers.

In 1991, Todd began to suffer a substantial decline in revenue. As a consequence, it made an early retirement offer (ERO) to all of its employees, including those remaining in Galveston. Even though the ERO successfully reduced Todd's workforce, Todd's revenue continued to decline.

In December 1992, Todd again began to examine its overall efficiency to determine where waste could be eliminated. Todd's board of directors mandated that an inquiry be made into prompt personnel reductions in Galveston. The inactive Galveston site was costing Todd about $60,000 per month. At this time, Patrick Hodgson, soon to be chairman of the board, recognized the immediate need to sell the Galveston site and to eliminate the positions of the Plaintiffs. Moreover, on January 5, 1993, one official in Seattle proposed that all Galveston employees be laid off. By January 19, another plan proposed only laying off four Galveston employees.

Also as a result of Todd's self examination, several officials realized that the Seattle site was overstaffed and decided that another ERO was the best way to reduce the workforce. At a meeting on February 9, 1993, Todd's board of directors elected Patrick Hodgson as chairman of the board and approved the proposed ERO. The ERO excluded the Plaintiffs only because they were in Galveston. They were otherwise eligible for the ERO.

The ERO was financed by Todd's retirement system's general assets. By the time it was offered, the Plaintiffs had each worked for Todd between 22 and 33 years and their standard benefits had already vested. The ERO did not reduce or eliminate the vested benefits although the Plaintiffs contend that the ERO reduced the retirement plan's ability to fund its future obligations. The Plaintiffs concede, however, that before the 1993 ERO, the Todd plan was at least $28 million overfunded. Additionally, the ERO benefits offered to the Seattle employees only totalled $3.2 million for the 23 employees who decided to participate in the ERO, while it would have cost an additional $1 million to offer the ERO to the Galveston employees. Moreover, Todd did not directly benefit from the ERO but incidentally benefitted through increased efficiency in its Seattle operations and decreased administrative and overhead costs.

On March 3, 1993, the Plaintiffs began inquiring of Seattle officials whether an ERO was going to be offered. The officials denied it although the ERO had already been made to the Seattle employees. The next day Todd directed one of the Plaintiffs to lay off four others effective March 31, but this dismissal was not communicated to the four until March 9.

On March 12, Patrick Hodgson went to Galveston to meet with the Plaintiffs, who complained bitterly about the ERO situation. As soon as Hodgson returned from Galveston, he directed that the remaining Galveston employees be terminated, but was convinced to delay the action. Eventually, two of the remaining Plaintiffs were laid off effective May 31 and the other was laid off on October

---

2. The Plaintiffs have objected to all of the Defendants' summary judgment evidence. The Plaintiffs' objection that none of the documents are authenticated and objection to Exhibit U are overruled because the Defendants have cured these defects in their reply exhibits. The Court also overrules the objections to Exhibits A, an annual report, and I, R, and T, minutes for meetings of the board of directors, because these documents fall within the ambit of Federal Rule of Evidence 803(6) and, where applicable, 803(3). Additionally, the Plaintiffs' objections to Exhibits C, E, F, G, and S are overruled because these interoffice memoranda fall within the ambit of Federal Rule of Evidence 803(3).

31. The Galveston site was sold in December 1993.

■ The Plaintiffs' discrimination claims under § 510 of ERISA, 29 U.S.C. § 1140,[3] are based upon two actions of Todd: (1) it illegally discriminated against the Plaintiffs because they were not offered the ERO that was offered to Seattle employees, and (2) it terminated the Plaintiffs because they inquired about the ERO.

■ To withstand Todd's summary judgment motion, the Plaintiffs must first establish that a genuine issue of material fact exists regarding their prima facie case. To establish a prima facie case under § 510, an employee must show: "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 922 (3d Cir.1990), *cert. denied*, 499 U.S. 920, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1991). An integral part of this prima facie case is that the employee show that the employer had a specific intent to interfere with the attainment of pension eligibility. *Hendricks v. Edgewater Steel Co.*, 898 F.2d 385, 389 (3d Cir.1990). In the present case, the Plaintiffs are complaining that Todd specifically intended to interfere with their right to attain the supplementary ERO benefits. The Plaintiffs' standard pension had already vested, and the ERO did not alter those benefits.

■ To survive summary judgment regarding their first claim, the Plaintiffs must show that a genuine issue exists over whether Todd *specifically intended* to interfere with the Plaintiffs' attainment of a right to which they may have become entitled. It is not enough for the Plaintiffs to simply show that they were treated differently from other employees, for the Fifth Circuit has stated that § 510 is not violated by the mere alteration of a benefits plan that results in an identifiable group of employees being treated differently. *McGann v. H & H Music Co.*,

946 F.2d 401, 406 (5th Cir.1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 482, 121 L.Ed.2d 387 (1992). This general rule was applied in circumstances almost identical to the present in *Aronson v. Servus Rubber, Division of Chromalloy*, 730 F.2d 12 (1st Cir.1984), *cert. denied*, 469 U.S. 1017, 105 S.Ct. 431, 83 L.Ed.2d 357 (1984), in which the court concluded that "a termination that cuts along independently established lines—here separate divisions—and that has a readily apparent business justification, demonstrates no invidious intent." *Id.* at 16.

Here, as in *Aronson*, the established line was between two divisions. Todd has shown, and the Plaintiffs have not controverted, that Todd's purpose in offering the ERO in the first place was to reduce costs. To effect this purpose, the ERO was only offered to the Seattle employees because the Seattle site was engaged in active operations and was overstaffed and the ERO was needed to reduce the workforce in Seattle. Conversely, the Galveston site was inactive, up for sale, and all knew, including the Plaintiffs, that their positions were uncertain and that they would eventually be dismissed from Todd's employ. There was no "overstaffing" in Galveston as in Seattle and offering the ERO to the Plaintiffs would have been inimical to the cost-saving purpose of the ERO itself.

"The legislative history [of § 510] reveals that [its] prohibitions were aimed primarily at preventing unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights." *Varhola v. Doe*, 820 F.2d 809, 816 (6th Cir.1987). The Plaintiffs have shown no such conduct here. Moreover, as the Fifth Circuit has stated, "[T]o interpret 'discrimination' broadly to include [Todd's] conduct would clearly conflict with Congress's intent that employers remain free to create, modify and terminate the terms and conditions of employee benefits plans without governmental interference." *H & H Music*, 946 F.2d at 407; *see Aronson*, 730 F.2d at 16

---

3. 29 U.S.C. § 1140 states:
   It shall be unlawful for any person to discharge ... or discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

(criticizing a overly broad reading of "discriminate" in § 510).

Additionally, the Plaintiffs have failed to adduce evidence of the existence of any right to which they may have become entitled under the benefits plan.

The right referred to in the second clause of section 510 is not simply any right to which an employee may conceivably become entitled, but rather any right to which an employee may become entitled pursuant to an existing, enforceable obligation assumed by the employer. "Congress viewed [section 510] as a crucial part of ERISA because, without it, employers would be able to circumvent the provision of *promised* benefits."

*H & H Music*, 946 F.2d at 405 (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)) (emphasis in original). The Plaintiffs' allegations show no *promised* benefit, for there is nothing to indicate that the Plaintiffs were ever promised the ERO.

Consequently, Todd is entitled to a summary judgment on the Plaintiffs' claim that they were illegally discriminated against when they were not offered the ERO because the Plaintiffs have not shown, with respect to their prima facie case, that a genuine issue of material facts exists for trial.

■ Even if the Court concluded that the Plaintiffs had established a prima facie case, the Court would still be compelled to grant Todd a summary judgment because the Plaintiffs have failed to meet their ultimate burden. After an employee establishes a prima facie case, the burden then shifts to the employer to articulate some legitimate reason for the challenged action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The employer then only has to produce evidence which would allow the trier of fact to rationally conclude that the employment decision was not motivated by discriminatory animus. *Berger*, 911 F.2d at 923 n. 17. Todd has articulated a legitimate reason for not offering the ERO to the Plaintiffs.

After the employer articulates a legitimate reason, the burden then shifts back to the employee to show that the reason was pretextual. *Hendricks*, 898 F.2d at 389. The Plaintiff has produced no evidence which would raise a genuine issue of material fact that the legitimate reasons articulated by Todd were in any was pretextual. Consequently, Todd is entitled to summary judgment.

■ Next, the Plaintiffs allege that they were discriminated against under § 510 because they were laid off after they inquired about the plan. The Plaintiffs have failed to establish a prima facie case for several reasons. First, just as with the Plaintiffs' first claim, they have failed to establish any promised benefit to which they would have been entitled.

■ Second, the Plaintiffs have shown no specific intent to interfere with their rights, which is *the* key factor in establishing a § 510 violation. *McLendon v. Continental Can Co.*, 908 F.2d 1171, 1177 n. 9 (3d Cir. 1990). The Plaintiffs are not required to show that Todd's sole purpose in terminating them was to interfere with their right to participate in the ERO, but rather that it was a motivating factor in the decision. *Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1043 (6th Cir.1992). Furthermore, the Plaintiffs have to show more than that their termination would save Todd money; the Plaintiffs must show that Todd took the action specifically to avoid pension liability. *Clark v. Resistoflex Co., Div. of Unidynamics Corp.*, 854 F.2d 762, 771 (5th Cir.1988); *Humphreys*, 966 F.2d at 1044.

In the present case, by terminating the Plaintiffs, Todd was avoiding no pension liabilities because even if the Plaintiffs would have continued their employment, they still would not have been eligible to participate in the ERO since it was only offered to the Seattle employees. In other words, there were no rights under § 510 with which Todd could have interfered. *See Perdue v. Burger King Corp.*, 7 F.3d 1251, 1255 (5th Cir.1993). The Court might conclude differently had it found that not offering the ERO to the Plaintiffs violated § 510 and that they were laid off before they could assert their right to participate in the ERO through extra-judicial

means like, for example, a union. But, such is not the case.

Moreover, even if the Plaintiffs would have been eligible to participate in the ERO, they have produced no evidence to show that they were dismissed with the specific intent to interfere with their participation in the ERO or to retaliate against them for their inquiries. As the Fifth Circuit has stated in similar circumstances, "where the only evidence that an employer specifically intended to violate ERISA is the employee's lost opportunity to accrue additional benefits, the employee has not put forth evidence sufficient to separate that intent from the myriad of other possible reasons for which an employer might have discharged him." *Clark v. Resistoflex Co.*, 854 F.2d at 771. Consequently, Todd is entitled to a summary judgment on the Plaintiffs' claim that they were terminated in violation of § 510.

As this juncture, the Court expresses its empathy for the Plaintiffs over the harsh result the ERISA laws have occasioned upon them. If a comparable claim, evidentiary-wise, would have been based upon any other federal anti-discrimination statute, the Plaintiffs would have, at the least, been entitled to their day in court. The Court would like nothing less than to effect its view of perfect justice in this poignant situation and attempt to make the Plaintiffs whole as best that this imperfect system would allow. But, the real-world law in the form of judicial interpretations of ERISA and Congress's inaction to change the result of those interpretations dictate otherwise, rendering the Plaintiffs' injuries all that more tragic and unjust. With these regrets, the Court must follow the mandates of the law by which it is bound and grant Todd's motion for summary judgment.

■ Todd has also requested the Court to award it attorney's fees and costs of suit under 29 U.S.C. § 1132(g), § 502(g) of ERISA. In rendering its decision, the Court must consider:

(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address....

*Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir.1980); *accord, Harms v. Cavenham Forest Indus.*, 984 F.2d 686, 694 (5th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 382, 126 L.Ed.2d 331 (1993). The decision to make such an award is within the sound discretion of the trial court. *Blank v. Bethlehem Steel Corp.*, 738 F.Supp. 1380, 1380 (M.D.Fla.1990). Moreover, a defendant is not entitled to an award of attorney's fees merely because it prevailed at the summary judgment stage. *Id.* at 1382–83.

The Court considers the first factor paramount, although not decisive, and finds nothing to indicate that the Plaintiffs acted in bad faith in pursuing their claims. The parties have provided no direct evidence which bears upon the second factor but the Plaintiffs' terminated status after many years of service to Todd intimates that they likely have very limited incomes and could ill afford Todd's request.[4] As for the third factor, the Court concludes that an award of attorney's fees under these circumstances would be unduly deleterious to future actions which could well prove to be viable under the present law. The fourth factor provides no support for Todd's position. Finally, the fifth factor, the relative merits of the parties' positions, weighs greatly against Todd. Based upon these considerations, Todd's request for attorney's fees and costs is DENIED.

In conclusion, Todd's motion for summary judgment is GRANTED and the Plaintiffs'

---

4. The Court does not distress at the paucity of evidence on this factor because even if the Plaintiffs were all millionaires, the weight of the other factors would still dictate that the Court deny Todd's request for attorney's fees.

claims are DISMISSED WITH PREJUDICE. Additionally, Todd's request for attorney's fees and costs of suit is DENIED.

Furthermore, the parties are ORDERED to file nothing further on these issues in this Court, especially motions to reconsider or the like, *unless* they can present *compelling* and *relevant* new evidence or legal authority which they could not, through the exercise of due diligence, have presented on original submission of these motions. *Any and all* further relief shall be sought in due course from the United States Court of Appeals for the Fifth Circuit. The parties shall each bear their own costs incurred herein to date.

IT IS SO ORDERED.

### *FINAL JUDGMENT*

For the reasons set forth in the Court's Order granting Defendants Todd Shipyards Corporation's and Todd Shipyards Corporation Retirement System's motion for summary judgment against Plaintiffs Robert Van Zant, Louis Trochesset, Don Senchal, Dalton Schexnaider, Joe Quiroga, Jr., Andrew Hansen, and Robert Allen, the Court DISMISSES the Defendants from this case WITH PREJUDICE.

As to Defendants Todd Shipyards Corporation and Todd Shipyards Corporation Retirement System, THIS IS A FINAL JUDGMENT.