United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 12, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

————————————

No. 03-20190

————————————

DANIEL E. BODINE; CYRIL N. BURKE;
WALTER B. CHMIELEWSKI; O. B. FOWLER,
JR.; SALLY A. GURLEY; WILLIAM R.
HEYDUCK; J. F. LOUTHER; DOUG MAHAN;
RICHARD J. MCAVOY; ROYCE G. OGDEN;
GAROLD J. PENNISTON; ROBERT L. REEVES;
LARRY DOWELL SCARBOROUGH,

Plaintiffs - Appellants,

versus

EMPLOYERS CASUALTY COMPANY; ET AL.,

Defendants,

EMPLOYERS CASUALTY COMPANY; EMPLOYERS
CASUALTY COMPANY, IN RECEIVERSHIP;
TEXAS EMPLOYERS' INSURANCE ASSOCIATION;
COOPERS & LYBRAND, LLP; WIRT DAVIS, II;
WILLIAM BURRES HEAD, III; TYRUS RAYMOND
JOHN; JAMES PRICE MITCHELL; CASWELL
LANIER DUNLAP; JOHN CLIFTON HOLMGREEN;
CHARLES BASCOM PETERSON, JR.; GERALD
WAYNE FRONTERHOUSE; WILLIAM HENRY
HUFF, III; WILLIAM CHARLES MCCORD;
BENJAMIN JOHNSON PITTMAN, JR.; KEVIN
WAYNE UZZLE; HARRY TRAVIS BOWEN, JR.;
MICHAEL JAMES KLINK; PATRICK LEWIS WHATLEY;
ALLEN CHARLES MCDONALD; WILLIAM HENRY
PROPES; JOSEPH HECTOR WILLEMS; MICHAEL
DOOLING; JACK M. WEBB; TEECCO EMPLOYEE
RETIREMENT PLAN; ROBERT LOISEAU; DAN HEIMAN;
JON NOGAREDE; WILLIAM HOWARD HAUN;
RANDELL TRAVIS MICKAN; PERFORMANCE INSURANCE
COMPANY; EMPLOYERS OF TEXAS LLOYD'S;
EMPLOYERS OF TEXAS LLOYD'S INC.; EMPLOYERS
INDEMNITY COMPANY; EMPLOYERS CASUALTY
CORPORATION; CASUALTY RISK MANAGEMENT
SERVICES INC.; EMPLOYERS NATIONAL LIFE
INSURANCE COMPANY; WILLIAM THOMAS JONES;
EMPLOYERS NATIONAL INSURANCE COMPANY,

Defendants - Appellees.

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY and WIENER, Circuit Judges, and ROSENTHAL, District Judge.[*]

E. GRADY JOLLY, Circuit Judge:

Employees of an insurance company complain that the defendants violated their rights under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq., by failing to discharge them when the company faced imminent dissolution and by maladministering their retirement benefit plan. They argue that, through their ERISA violations, the defendants denied them the opportunity to receive enhanced retirement benefits. We find no violation of ERISA, and thus affirm the district court's dismissal of all claims.

I

Plaintiffs-Appellants were employees (collectively, the "Employees") of Employers Casualty Company ("ECC") and participants in ECC's Employment Retirement Plan (the "Plan"), a pension plan governed by ERISA. In October 1990, ECC was suffering financial difficulties. It implemented a reduction in force and amended the Plan to allow certain participants to receive enhanced retirement benefits ("Enhanced Benefits"). A participant qualified for

---

[*] District Judge of the Southern District of Texas, sitting by designation.

Enhanced Benefits if he or she: 1) was selected for termination between October 1 and December 31, 1990 ("First Window") for the stated reason of workforce reduction or job elimination; 2) satisfied certain age and service requirements; and 3) filed a written election to receive such benefits with the committee administering the Plan.

Because of continuing financial difficulties, on March 9, 1992, a Texas state court placed ECC under the control of a conservator, the Texas Commissioner of Insurance. The conservator engaged Coopers & Lybrand ("Coopers") to provide management services to ECC.

There was no economic turnaround. ECC again amended the Plan on May 1, 1992, retroactively extending the time during which a participant could become eligible for Enhanced Benefits to include the period from January 1 through December 31, 1992 ("Second Window"). Financial problems persisted, and, on November 11, 1992, ECC amended the Plan to extend the eligibility period to December 31, 1993 ("Third Window"). On December 10, 1993, the ECC Board of Directors adopted a final amendment to the Plan, freezing the Plan as of December 31, 1993 ("Freeze Amendment"). (No one who was not already a participant on that date could thereafter become a participant, and no further increases in accrued benefits for existing participants could occur.)

As of December 1993, about 238 employees were eligible for Enhanced Benefits, ninety percent of whom were terminated by

3

December 31 (under the authority of ECC officers and Coopers & Lybrand). Approximately 25 eligible employees were not terminated by December 31, and thus were not allowed to receive the Enhanced Benefits for which they would have qualified. All of the Employees were in this latter group, and several of them had specifically asked that their employment be terminated on or before December 31.

Almost every ECC officer who satisfied the age and service requirements for Enhanced Benefits arranged to be terminated before December 31, 1993 -- including some whose duties were not eliminated. In some cases, terminated employees were then rehired as independent contractors. The Employees were not given this opportunity.

On November 23, 1993, in anticipation of a receivership order, the Commissioner appointed Jack Webb as the Special Deputy Receiver. The Commissioner instructed Webb to create "a detailed activity plan that projects the expected fees, expenses, and timelines required to close the ECC estate." Webb was also required to review personnel and retain only those essential to liquidating the company.

On January 6, 1994, the Texas court withdrew the conservator and appointed the Commissioner as temporary receiver, at which point Coopers's role as consultant ceased. On this date, ECC's corporate existence also ceased, the company became ECC in Receivership ("ECCR"), and the Employees were immediately hired to perform services for ECCR. By order dated February 11, 1994, the

4

Commissioner became permanent receiver. Over the course of 1994, ECCR terminated all Employees' employment.

While winding down ECCR's operations, ECCR and its officers -- Jack Webb and three others -- (collectively, "Receivership Defendants") liquidated the Plan's assets in May 1996. The Receivership Defendants transferred some of the Plan assets to The Prudential Insurance Company of America and Hartford Life Insurance (together, "Insurer Defendants"), in exchange for annuities to fund the pension benefits of Plan participants. These annuities did not include Enhanced Benefits for the Employees, but did include Enhanced Benefits for employees who had qualified and made the necessary elections under the terms of the Plan. Excess assets were transferred to ECCR, or otherwise used for purposes other than the exclusive benefit of Plan participants, beneficiaries, and administrative expenses.

On December 31, 1996, the Employees filed a complaint in the Southern District of Texas, alleging various ERISA violations by ECC, ECC officers, and Coopers (collectively, "Employer Defendants"), as well as the Receivership Defendants, the Plan, and the Insurer Defendants.[1] Before responding to the complaint, the Receivership Defendants filed for injunctions in the Texas state

---

[1]Although the terms "Officer Defendants" and "Director Defendants" were used interchangeably and collectively in motions and responses below, neither the pleadings nor the briefs indicate any claim against the ECC Board of Directors. As such, we affirm the district court's decision to dismiss the ECC directors as parties to this action.

courts in which the receivership proceedings were being conducted. On September 5, 1997, the federal district court administratively closed this case and granted the parties leave to reinstate at such time as they deemed appropriate. The state district courts issued the requested injunctions and orders prohibiting the Employees from pursuing this cause of action. The Texas Court of Appeals reversed the lower courts and the Texas Supreme Court denied a petition for review. On June 21, 2000, the state district courts vacated all injunctions applicable to the Employees.

This case was reinstated on February 14, 2001, and was referred to the magistrate judge for full pretrial management. Defendants filed various motions to dismiss and, after a period of discovery, the magistrate judge issued a recommendation that the motions to dismiss be granted. After the Employees filed objections, the magistrate judge revised her recommendation and issued a supplemental memorandum. The district court adopted the revised recommendation, and entered an order dismissing all claims against all defendants.

The Employees filed a timely notice of appeal.

## II

We review a dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6) de novo. Oliver v. Scott, 276 F.3d 736, 740 (5th Cir. 2002). We now take up, in order, the Employees' claims that: 1) the Employer Defendants violated ERISA § 510, 29 U.S.C. § 1140, by failing to terminate the Employees; 2) the Employer

6

Defendants breached their fiduciary duty to the Employees under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), by failing to terminate them; 3) the Receivership Defendants breached their fiduciary duty to the Employees by failing to administer the Plan in accordance with ERISA's anti-cutback provision, § 204(g)(1), 29 U.S.C. § 1054(g)(1); 4) the Receivership Defendants breached their fiduciary duty to the Employees by transferring Plan assets in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D); and 5) the Plan and the Insurer Defendants are properly named as defendants to this action as necessary parties (although neither is charged with violating any rights of the Employees).

## A

We first consider whether the Employees state a valid claim against the Employer Defendants under ERISA § 510, for failure to terminate them so as to make the Employees eligible for Enhanced Benefits.[2] The district court, in adopting the magistrate judge's recommendation, found that the Employees had not shown any authority for a § 510 claim based on the retention of the

---

[2]Section 510 reads in relevant part as follows:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

29 U.S.C. § 1140.

7

claimants. Similarly, it held that the Employees made no allegations against the Employer Defendants that implicate the sort of "unscrupulous" behavior that § 510 was intended to prohibit.

The Employees challenge the district court's holding, arguing that, given the lack of material business reasons to treat the Employees differently from their fellow employees (who were terminated by December 31, 1993 per the job elimination program), the failure of the Employer Defendants to terminate them constituted impermissible discrimination under § 510. They also seem to argue, if only implicitly, that in prohibiting various actions meant to interfere with pension benefit rights, § 510 prohibits the passive act of *retention* for the same purpose. The Employees admit that there is *no* precedent for sustaining such claims -- and that the statutory text speaks in terms of discharge and other disciplinary actions -- but they seem to suggest that this action nevertheless falls neatly within the general scope of ERISA.

To sustain a valid § 510 claim, an employee must show: (1) prohibited (adverse) employer action (2) taken for the purpose of interfering with the attainment of (3) any right to which the employee is entitled. See <u>Van Zant v. Todd Shipyards Corp.</u>, 847 F.Supp. 69, 72 (S.D.Tex. 1994).[3] The Employer Defendants, like the

---

[3]Section 510 also applies to adverse actions taken for the purpose of interfering with rights "to which such participant may become entitled under the plan." The Employees' only possible hope

8

magistrate judge, point to the absence of each of these elements, citing <u>Perdue v. Burger King Corp.</u>, 7 F.3d 1251 (5th Cir. 1993), and <u>Garavuso v. Show Corp. of America Ind., Inc.</u>, 709 F.Supp. 1423 (S.D.Ohio 1989), <u>aff'd</u> 892 F.2d 79 (6th Cir. 1989).[4]

This Court held in <u>Perdue</u> that "[t]he prohibitions under the statute do not extend *per se* to an employer who retains an employee so as to avoid payment of severance benefits under an ERISA plan." 7 F.3d at 1255. That is, there must be some unscrupulous conduct or intentional act (such as harassment or nefarious inducement to stay) on the part of the employer. <u>See</u>, <u>e.g.</u>, <u>id.</u>; <u>West v. Butler</u>, 621 F.2d 240, 245 (6th Cir. 1980). Moreover, ERISA does not require an employer to calculate various employees' gains and losses upon termination, and/or to terminate *all* employees at a given benefit level. <u>See</u> <u>Van Zant</u>, 847 F.Supp. at 72 (§ 510 is designed to prevent "unscrupulous employers from discharging or harassing their employees"). Here, there has simply been a failure to show the unscrupulous conduct required for a § 510 action against an employer.

Finally, it appears that the Employees neither had nor would have become entitled to any right such that § 510 could come into play in the first place. This requirement for "entitlement" to a

---

lies in this language, as they clearly had no *existing* enforceable rights to Enhanced Benefits.

[4]The novelty of this sort of claim is borne out by the paucity of apposite case law.

§ 510 action is only satisfied if the employer has promised the employee a benefit that is eventually denied. McGann v. H & H Music Co., 946 F.2d 401, 405 (5th Cir. 1991). The Employees' attempt to distinguish McGann (as applying only to changes in welfare benefits) fails because it was the vesting of the right, rather than the nature of the benefit, that was at issue in McGann. We agree with the decision of the district court that the Employees have not alleged that the Employer Defendants ever took any action that resulted in a promise of enhanced benefits; and so we conclude that they have not stated a claim for a violation of § 510 for this reason and the other reasons to which we have alluded above.

B

We now turn to the question of whether the Employer Defendants' failure to terminate the Employees' employment (thereby allowing them to qualify for Enhanced Benefits under the Plan) was a breach of fiduciary duty under ERISA § 404(a)(1).[5]

The Employees admit that the Employer Defendants did not have managerial authority over the Plan assets, but assert that their claims relate to a general fiduciary duty of the employer, not the specific duties of a plan administrator. They make no allegations, however, of deceptive practices, misrepresentations, or other

---

[5]Section 404(a)(1) requires a "fiduciary" to "discharge his duties with respect to a plan solely in the interests of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1).

10

behavior typically associated with fiduciary breaches by employers under ERISA, as required by <u>Varity v. Howe</u>, 516 U.S. 489 (1996).

The Employees nevertheless argue that the district court unduly narrowed the holding in <u>Varity</u> to require an element of deception. In <u>Varity</u>, employees sued an employer who had induced them to give up their current jobs and to transfer to a failing subsidiary with repeated promises that benefits would be unaffected. The Court found that the employer went beyond its employer function and acted as an ERISA fiduciary when it misled employees about the security of their benefits, and that these employer actions violated those ERISA fiduciary obligations. The <u>Varity</u> court held -- and this is the point the Employees make -- that an employer can be a fiduciary under ERISA even if it does not manage plan assets, so long as it acts with discretionary authority respecting the plan's administration. <u>Varity</u>, 516 U.S. at 498 (interpreting ERISA § 3(21)(A)). Thus, the Employees argue, the Employer Defendants' authority over ordinary business decisions provided sufficient connection to the Plan's administration to create fiduciary duties under ERISA. The duties were breached when, for purely Plan benefit considerations rather than business considerations, the Employees were not terminated.

The Employer Defendants contend, and we agree, that a decision to terminate an employee, who is also a Plan beneficiary, is inherently *not* fiduciary in nature. See <u>Hickman v. Tosco Corp.</u>,

11

840 F.2d 564, 567 (8th Cir. 1988) (defendant's decision to terminate employee rather than carry him on payroll did not directly affect the administration of the pension plan or its assets).[6]  Further, the Employees misread <u>Varity</u>: the <u>Varity</u> defendants intentionally connected employment-related statements (and actions) to benefit-related statements.  Here, the Employees can only argue, at best, that a lack of a legitimate business need to retain them as employees gives rise to a fiduciary responsibility.  Even if the Employees' allegations were true, the Employer Defendants are correct to emphasize this crucial distinction between the cases.  <u>See</u> <u>Varity</u>, 516 U.S. at 505 ("We do not hold . . . that [defendant] acted as a fiduciary simply because . . . 'an ordinary business decision turn[ed] out to have an adverse impact on the plan.'" (citation omitted)).

In sum, no fiduciary duty was created or violated as between the Employer Defendants and the Employees.  The Employees' reasoning logically leads to the untenable conclusion that the existence of a severance plan makes *any* termination decision a fiduciary activity.  Indeed, it is hard to imagine that ERISA

---

[6]"[I]t is the nature of the acts taken by an employer -- not the intent behind them -- that determines in what capacity the employer acted." <u>Long v. Excel Telecomm. Corp.</u>, 1999 WL 1029088 at *2 (N.D.Tex. Nov. 9, 1999) (even if rationale for firing was pretext for preventing plaintiff from exercising his stock options, termination decision occurred in employer capacity, not fiduciary capacity).

12

fiduciary duties would *ever* require an employer to fire its employees.

Consequently, the Employer Defendants have no liability in this case.

C

Next we take up the Employees' claim against the Receivership Defendants. They argue that ERISA's anti-cutback rule applies, and that the Receivership Defendants breached a fiduciary duty in failing to administer the Plan in accordance with that rule. The "anti-cutback provision" provides that "[t]he *accrued* benefit of a participant under a plan may not be decreased by an amendment of the plan." ERISA § 204(g)(1), 29 U.S.C. § 1054(g)(1) (emphasis added).

In the district court, the Employees apparently acknowledged that "window benefits," such as the Enhanced Benefits here, *generally* are not considered a permanent part of a plan, and thus are not protected by the anti-cutback rule. The district court (in a matter not addressed by the precedent of this circuit) considered the Employees' argument that the three amendments to the Plan relating to the "window benefits" -- because they occurred in consecutive time periods -- created a reasonable expectation here that the Enhanced Benefits were an ongoing plan feature, allowing such benefits to accrue to Plan members, including the Employees.

The district court (per the magistrate judge's recommendation)

13

ultimately declined to determine whether the benefits had accrued -- or whether the anti-cutback rule applied -- because the Employees had not alleged the essential elements required to plead a claim under the anti-cutback rule in that they had not qualified for Enhanced Benefits under the Plan. Specifically, the Employees did not file the required written election to forego severance pay in exchange for the Enhanced Benefits as the Plan required.[7] Thus, no benefits could have accrued to such non-complying beneficiaries.

The Employees, however, cite their First Amended Complaint as sufficiently alleging that the Enhanced Benefits had accrued because they arose from consecutive amendments, relying on Treasury Regulation § 1.411(d)-4(c)(1) for support of their theory.[8] When the Receivership Defendants promulgated the Freeze Amendment and its qualification deadline, therefore, they violated the anti-cutback rule and their fiduciary duties to follow the Plan's terms. Further, a reliance on the Plan's written election provision is, according to the Employees, an extreme and meaningless formalism

---

[7]See the three requirements for Enhanced Benefits qualification, <u>supra</u>.

[8]This Regulation interprets an Internal Revenue Code provision, 26 U.S.C. § 411(d)(6), that mirrors ERISA's anti-cutback rule. It provides, in relevant part:

> Generally, [benefits] are section 411(d)(6) protected benefits only if they are provided under the terms of a plan. However, if an employer establishes a pattern of repeated plan amendments providing for similar benefits in similar situations for substantially consecutive, limited periods of time, such benefits will be treated as provided under the terms of the plan.

14

that is out of place in the jurisprudence of the twenty-first century. Even aside from that formality, the Employees argue, the Employees cannot have failed to satisfy the relevant conditions because they were not given the opportunity to do so.

We find the Employees' novel arguments unconvincing, even in the twenty-first century, and agree with the rationale of the district court. This Court has stated that the anti-cutback rule was intended to "prohibit[] the elimination or reduction of retirement benefits that have already vested or accrued," so the instant analysis must first determine whether the Enhanced Benefits "vested or accrued" before December 10, 1993, the date of the Freeze Amendment. Harms v. Cavenham Forest Indus., Inc., 984 F.2d 686, 691 (5th Cir. 1993); see also Spacek v. Maritime Assoc., 134 F.3d 284, 291 (5th Cir. 1998). In Harms, the employees had already qualified for a special retirement benefit that was subsequently eliminated. The Employees, by contrast, did not (and could not) plead that they had satisfied *all* pre-amendment Plan conditions because neither had they been terminated before December 31, 1993 (let alone December 10), nor had they filed the proper written request for Enhanced Benefits as required by the Plan. This "vesting" or "accrual" concept is not "meaningless formalism" but an essential statutory requirement.

15

We thus affirm the district court's ruling that the Receivership Defendants have no liability under the anti-cutback rule.

D

The Employees also claim that Receivership Defendants breached their fiduciary duty by transferring excess Plan assets to ECCR in violation of ERISA § 406(a)(1)(D) instead of using those funds to provide Enhanced Benefits for the Employees.[9]  This claim, however, depends entirely on the Employees' contention that they qualified for Enhanced Benefits under the "wrongful retention" and "anti-cutback" fiduciary breach theories.  We have held previously that the Employees were not entitled to receive Enhanced Benefits under either theory, so there can be no breach of § 406(a)(1)(D).

Consequently, the Receivership Defendants have no liability in this case.

E

Finally, the Employees admit that they do not assert any claims against either the Plan or Insurer Defendants, but that these parties were named as defendants because their involvement would be necessary to afford Employees the relief requested.  As we are affirming the dismissal of all of the Employees' claims, we

---

[9]Section 406(a)(1)(D) prohibits a fiduciary from transferring plan assets to a "party in interest."  ECCR is a "party in interest" because it is "an employer . . . whose employees are covered by [a benefit plan subject to ERISA]."  ERISA § 3(14)(C), 29 U.S.C. § 1002(14)(C).

16

also affirm the dismissal of the Plan and Insurer Defendants as parties to this action.

III

For the foregoing reasons, the district court was correct in dismissing the Employees' claims. Accordingly, the district court's decision is

AFFIRMED.