United States Court of Appeals,

Fifth Circuit.

No. 93-1501.

STEPHEN ALLEN LYNN, P.C. EMPLOYEE PROFIT SHARING PLAN AND TRUST, et al., Plaintiffs-Appellees,

v.

STEPHEN ALLEN LYNN, P.C., et al., Defendants,

Florence Veronica Lynn, Defendant-Appellant.

July 13, 1994.

Appeal from the United States District Court for the Northern District of Texas.

Before GOLDBERG, DAVIS, and DeMOSS, Circuit Judges.

GOLDBERG, Circuit Judge:

This appeal arises out of a declaratory judgment action filed to determine the parties' rights in a pension plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. Pursuant to Section 510 of ERISA, appellant, Florence Veronica Lynn, seeks relief from alleged discrimination that inhibited her in the exercise of her rights under that plan. The district court dismissed appellant's claim on the ground that she failed to state a claim upon which relief could be granted since she was neither a participant in nor a beneficiary of the plan at the time the allegedly discriminatory actions were taken. For the reasons that follow, we reverse the judgment of the district court and remand this case for further proceedings.

## I. BACKGROUND

In the midst of a contentious divorce, Florence Veronica Lynn

1

petitioned the state district court in Dallas County to order her husband, Stephen Allen Lynn, to pay interim attorney's fees. On May 17, 1991, the Court Master overseeing the proceedings recommended that Mr. Lynn pay $50,000 to Ms. Lynn's attorney, Ike Vanden Eykel.[1] Mr. Lynn appealed the Master's recommendation to the state district court that held jurisdiction over the case. On August 16, 1991 the court denied Mr. Lynn's appeal and ordered him to pay $44,000 to cover Ms. Lynn's expenses.[2] The court set August 26 as the deadline for Mr. Lynn to make the required payments.

To provide funds for the payment order, the court also ordered Mr. Lynn to withdraw money held as community property in his retirement account.[3] The targeted retirement account, the Stephen Allen Lynn, P.C., Employee Profit Sharing Plan and Trust (the "Plan"), was established by Mr. Lynn in the early 1980s out of funds derived from his wholly owned corporation. The Plan, for which Mr. Lynn had installed himself as trustee, qualified as an employee benefit plan as defined by ERISA. 29 U.S.C. § 1002(3).

After he received the Master's recommendations to pay out funds from the Plan but before he received the state district court order, Mr. Lynn, as the Plan administrator, executed various amendments to the Plan. On May 20, 1991, he restated the Plan

---

[1]The Master also recommended that Mr. Lynn pay Ms. Lynn $10,000 for support and $26,000 for the guardian ad-litem representing the Lynn's child, David.

[2]The figure included $32,000 to Mr. Vanden Eykel and $12,000 to the guardian-ad-litem.

[3]The retirement plan was the only apparent source of funds sufficient to cover the court ordered payments.

having omitted three sections, all of which pertained to pre-retirement disbursement of funds.  The sections removed from the plan were:  (1) a provision that permitted pre-retirement distributions to participants, (2) a provision that allowed advances against distributions by reason of hardship, and (3) a provision that authorized loans to plan participants and beneficiaries.  On August 6, 1991, Mr. Lynn amended the plan a second time.  This second change prohibited anyone from terminating the Plan or completely distributing the Plan funds or altering the trustee of the Plan without the "voluntary written consent of the Participant with the largest account."  That participant was, of course, Mr. Lynn.  Finally, on August 15, 1991, Mr. Lynn made the previous amendments retroactive to February 1, 1987 and designated Comerica Bank-Texas ("Comerica") as the Trustee of the Plan in lieu of Mr. Lynn.  The sum of these changes was to disable Mr. Lynn, or anyone else, from paying out any Plan funds as required by the state court.

By the end of August, 1991, Mr. Lynn had yet to comply with the state court's order to pay his wife's interim attorney's fees. Ms. Lynn's attorney and the guardian ad-litem filed a motion in the state court seeking to hold Mr. Lynn in contempt for his failure to comply with the court's orders.  Mr. Lynn requested Comerica, now the Plan trustee, to turn over sufficient Plan assets to pay the court-ordered fees and expenses.  Unsurprisingly, Comerica determined that, because of the recent amendments to the plan, Mr. Lynn would be unable to obtain a disbursement of Plan funds prior

3

to his retirement at age 65, twenty years hence. The bank therefore refused to disburse the funds from the Plan.

On October 17 of the same year, Comerica and the Plan commenced the instant action. The plaintiffs sought a declaratory judgment pronouncing the Plan amendments valid and the refusal to disburse funds proper.[4] Ms. Lynn, in response, did not challenge the right of Mr. Lynn to amend the Plan. She did, however, file a counterclaim contesting the particular amendments made by Mr. Lynn, complaining that his actions violated Section 510 of ERISA. Section 510 prohibits a person from discriminating against a "participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, [or] this subchapter ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, [or] this subchapter." 29 U.S.C. § 1140. In this counterclaim, she asked the court to declare the amendments to the plan invalid and to order the trustee to comply with the state court order requiring disbursement of the Plan funds.[5]

---

[4]Ms. Lynn filed counterclaims alleging conspiracy and breach of fiduciary duty. The district court dismissed the conspiracy claim on preemption grounds and the breach of fiduciary duty claim for lack of standing. Ms. Lynn has not appealed these decisions.

[5]The basis for her claim was 29 U.S.C. § 1132(a) which provides:

> A civil action may be brought ...
>
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to

4

The district court granted the Trustee's motion for summary judgment, holding that the revisions of the Plan were valid and that Comerica acted properly in denying Mr. Lynn's demand for distribution. The court addressed Ms. Lynn's discrimination claim by noting that Section 510 proscribes only discrimination that is directed against participants and beneficiaries of an ERISA plan. The court held that regardless of any discriminatory intent on the part of Mr. Lynn in amending the Plan, Ms. Lynn was prevented from bringing her discrimination claim because she was neither a participant nor a beneficiary at the time the amendments were effected.

The district court assumed that Ms. Lynn qualified as an alternate payee under a qualified domestic relations order ("QDRO") when on June 24, 1992, the state court issued the decree of divorce. The court below then noted that ERISA provides that "[a] person who is an alternate payee under a qualified domestic relations order shall be considered for purposes of any provision of the chapter a beneficiary under the plan." 29 U.S.C. § 1056(d)(3)(J). However, the district court determined that because she did not qualify as an alternate payee in June and August of 1991 when the discriminatory actions were alleged to have occurred, she could not assert a claim under Section 510. Without reaching the merits of Ms. Lynn's claim, the court granted Comerica and the Plan's summary judgment motion and dismissed her counterclaim. Ms.

redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

5

Lynn now appeals.

## II. ANALYSIS

This appeal raises questions about whether the anti-discrimination provisions of ERISA can protect a claimant in the position of Ms. Lynn. We conclude that Ms. Lynn is precisely the sort of claimant who Congress intended to protect through the enactment of the anti-discrimination provisions and that the lower court erred in granting summary judgment against Ms. Lynn on her discrimination claim. We therefore reverse the district court and remand this case to determine whether the amendments to the Plan should be invalidated and the administrator forced to disburse the ordered funds.

As noted above, a "person who is an alternate payee under a qualified domestic relations order shall be considered for purposes of any provision of this chapter a beneficiary under the plan." 29 U.S.C. § 1056(d)(3)(J). When, on June 24, 1992, the Texas district court issued the Lynn's divorce decree and along with it, a qualified domestic relations order, the court provided Ms. Lynn with beneficiary status under ERISA. At that point, she was empowered under 29 U.S.C. § 1132(a) to enforce any rights granted to her by ERISA, including the anti-discrimination counterclaim she asserted in the instant case.[6]

Under the statute, a "civil action may be brought ... by a participant, beneficiary, or fiduciary" to enforce rights granted

---

[6]Ms. Lynn's counterclaim was filed in July of 1992, *after* she obtained the QDRO.

6

by ERISA, including rights asserted under Section 510. 29 U.S.C. § 1132(a). Ms. Lynn, because she was a beneficiary at the time she asserted her ERISA counterclaim, had standing to assert that claim. *Cf. Yancy v. American Petrofina, Inc.,* 768 F.2d 707, 708 (5th Cir.1985) (ERISA pension claimants who were participants at time of injury but who later accepted lump sum payments covering the full extent of their benefits lacked standing to assert a claim under Section 1132 for benefits because "questions of standing must be resolved on the facts existing when the challenge is raised."); *Joseph v. New Orleans Electrical Pension & Retirement Plan,* 754 F.2d 628, 630 (5th Cir.) *cert. denied,* 474 U.S. 1006, 106 S.Ct. 526, 88 L.Ed.2d 458 (1985) (same). This case reaffirms the importance of the precept that an "employer should not be able through its own malfeasance to defeat the employee's standing." *Christopher v. Mobil Oil Corp.,* 950 F.2d 1209, 1221 (5th Cir.), *cert. denied,* --- U.S. ----, 113 S.Ct. 68, 121 L.Ed.2d 35 (1992).

The question that remains is whether, given the delay between the allegedly discriminatory actions and the attainment of beneficiary status, Ms. Lynn could state a valid claim under Section 510. The district court held that even if Ms. Lynn became a beneficiary when she received the QDRO, she did not qualify for the protections of Section 510 since she was not a beneficiary at the time that Mr. Lynn executed the complained of amendments. The district court, for this reason, dismissed her claim. Our review of the circumstances of this case prompts us to reach the opposite conclusion: Mr. Lynn's actions constitute precisely the type of

7

discrimination prohibited by ERISA and Ms. Lynn should be given the opportunity to prove such a claim in the district court.

Section 1140 makes it "unlawful for any person to ... discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, [or] this subchapter."  29 U.S.C. § 1140. A requirement of contemporaneity between the time the discriminatory actions are executed and the attainment of beneficiary status cannot and should not be read into this statute to preclude the instant claim.

Ms. Lynn's counterclaim alleges that Mr. Lynn, as administrator and trustee of the Plan, altered the Plan in the midst of their hotly contested divorce to prevent compliance with an order requiring disbursement of Plan funds.  Indeed, Mr. Lynn amended the Plan only after receiving the Court Master's recommendation to disburse the funds.  By all accounts, his actions were an attempt to prospectively disable his ability to comply with the divorce court's authority in a frank manipulation of the protection afforded by ERISA.  Such actions on the part of Mr. Lynn come perilously close to a sham on the divorce court as well as the federal system of enforcing the rights of pension plan participants and beneficiaries.  Comerica and the Plan now argue that Ms. Lynn lacked a cause of action to complain of her husband's thinly veiled attempt to cheat her and avoid complying with a state divorce court order.  We find, however, that Ms. Lynn has a valid complaint that the statute was improperly applied in her case.

8

Ms. Lynn has introduced ample evidence that the amendments executed by her ex-husband were intended expressly to deprive her of rights to the pension plan. We need not address whether these misdeeds created a viable cause of action at the time he executed the amendments. What is clear, however, is that Ms. Lynn alleged sufficient facts to state a claim that both the intent and effect of Mr. Lynn's actions, albeit with some delay, was to discriminate against his ex-spouse in the realization of rights she would come to possess in his pension plan. The injury was realized and became actionable at the moment she attained beneficiary status through the QDRO. That is, the instant Ms. Lynn became a beneficiary with rights granted by the QDRO, the amendments took their discriminatory effect, preventing her from realizing a distribution from the plan. At this point, we have no trouble concluding that her cause of action was viable.

This case is analogous to the situation of a mad terrorist who plants a time bomb in a school which explodes after ten years, killing a classroom full of second-graders. Although none of the lives existed at the time the bomber placed the explosives, once the bomb detonates, the crime is no less murder.

We conclude that the district court erred in dismissing Ms. Lynn's claim. Where the discriminatory actions are not contemporaneous with the victim's status as a participant or beneficiary, a cause of action under ERISA will lie if the actions generate their intended effect at the time the victim attains proper status under ERISA. Ms. Lynn has therefore stated a valid

9

Section 510 discrimination claim, and we will allow her to pursue it in the trial court below.

Comerica and the Plan attempt to head off the possibility of a remand of Ms. Lynn's discrimination claim by asserting that our decision in *McGann v. H & H Music Co.,* 946 F.2d 401, 407 (5th Cir.1991), *cert. denied,* --- U.S. ----, 113 S.Ct. 482, 121 L.Ed.2d 387 (1992), also forecloses the possibility of Ms. Lynn bringing a claim. That case, they assert, allows an employer and sponsor of a plan free reign in altering the terms of coverage available to employees. Appellees have erred, however, in interpreting our decision in *McGann.* This case offers no substantial obstacle to remanding for a determination of discrimination.

In *McGann,* an employer amended a plan to severely curtail benefits payable to individuals who suffered from Acquired Immune Deficiency Syndrome ("AIDS") shortly after learning that one of its employees had contracted the disease. The court affirmed a summary dismissal of the participant's claim of discrimination under Section 510 of ERISA on the grounds that the former employee had failed to show the employer's specific intent to discriminate. *McGann,* 946 F.2d at 404. The court held that the general desire to avoid the cost of covering people with AIDS was not sufficiently specific to constitute actionable discrimination under Section 510 since the cost rationale applied equally to all people with AIDS. *Id.*

In this case, Comerica and the Plan argue that the plan amendments, as in *McGann* effected all participants and

10

beneficiaries equally and therefore are not actionable under section 510. We disagree. In fact, Comerica and the Plan's interpretation of the case law would nullify the protections embodied by the anti-discrimination provisions of ERISA. In the instant case, Ms. Lynn has offered sufficient evidence to state a claim of discrimination because she has introduced evidence from which it can be inferred that Mr. Lynn specifically intended to discriminate against her in realizing benefits under the plan. *See Unida v. Levi Strauss & Co.,* 986 F.2d 970, 979-80 (5th Cir.1993) (requiring evidence of specific intent to violate ERISA under Section 510). The absence of such a showing in *McGann* was exactly the reason the court dismissed that case. We are therefore compelled to remand this case for further proceedings as to this question.

## III. CONCLUSION

We REVERSE the decision dismissing Ms. Lynn's section 510 claim and REMAND for further proceedings to determine whether her husband's specific intent in effectuating the plan amendments was discriminatory.

11