United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 6, 2003**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

---

m 00-51109

---

ANDREA D. HATTEBERG,

Plaintiff-Appellant,

VERSUS

RED ADAIR COMPANY INCORPORATED EMPLOYEES' PROFIT SHARING PLAN
AND ITS RELATED TRUST;
ADAIR ENTERPRISES, INC.;
FULBRIGHT & JAWORSKI, LIMITED LEGAL PARTNERSHIP;
STEWART W. GAGNON; JONATHAN GOLDHOR; DONALD M. JANSEN;
JOY M. SOLOWAY; LISA HARBOR; JERYL GOLUB;
JOETTA JANCZAK; JAMES RICHARD HATTEBERG,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Western District of Texas
m MO-97-CV-209

---

Before JOLLY, SMITH, and
    EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

Andrea Hatteberg ("plaintiff") appeals a summary judgment in this dispute over various employee benefit plans. Finding no error, we affirm.

I.

Plaintiff and James Hatteberg were parties to a contentious divorce in 1992. Among the community property divided between them were the assets owed to James Hatteberg under the Red Adair Profit Sharing Plan; Adair Enterprises, Inc., was the plan administrator. In 1992, a state court entered a qualified domestic relations order ("QDRO") regarding James Hatteberg's accrued benefits under the plan. This first QDRO entitled plaintiff to a small portion of the plan's assets, so she appealed. The method of calculation of her entitlements remained a matter of dispute and litigation until 1997, when all parties reached a mediated settlement respecting the substance and general form of a final QDRO, recognizing a larger entitlement for plaintiff. In 1998, under a second QDRO obtained pursuant to the settlement, plaintiff was paid, from the plan's trust account, the amount owed her under the settlement.

She was not completely satisfied, however. She sued the instant defendants in federal court, asserting claims arising from the prior dispute. The defendants include Adair Enterprises, Inc. (hereinafter "Adair"), which was the Plan administrator and a fiduciary to plaintiff, as well as Adair Enterprises employee Joetta Janczak, the law firm of Fulbright & Jaworski ("Fulbright"), several Fulbright attorneys serving as James Hatteberg's divorce counsel, and several Fulbright attorneys who advised the plan administrator. Plaintiff claims the administrator refused to supply requested information about the plan and that various defendants breached their fiduciary duty, interfered with protected rights, engaged in prohibited transactions, and committed violations of the Employee Retirement Income Security Act of 1974 ("ERISA").

To "bring focus" to the case, the district court appointed two special masters with expertise in the intricacies of ERISA law. The masters produced reports helpful to the court in its final determinations. Later, at the court's request, plaintiff and defendants filed respective motions for summary judgment. The court found the bulk of plaintiff's claims to be deficient.

The court observed that the first claim, based on alleged violations of 29 U.S.C. § 1132's requirement that plan administrators supply certain information to beneficiaries, had merit. The court, however, in the absence of a federal limitations period for such a claim, applied the limitations period of an analogous Texas state law claim and found that plaintiff's claim fell outside the two-year period.

The court also put aside plaintiff's claims of breaches of fiduciary duty. She had argued that the plan administrator breached its fiduciary duty to her in five ways: first, by failing to distribute the plan benefits to her on November 14, 1994, the date of distribution to other plan participants; second, by making a passthrough amendment, which provided that

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

all future expenses of the plan's administration were to be paid out of plan assets; third, by failing to replace the Fulbright attorneys advising the plan when it learned that other Fulbright attorneys were representing James Hatteberg as divorce lawyers; fourth, that the administrator failed to operate the plan in accordance with plan documents by improperly requiring any domestic relations order to be final before it could be qualified; and fifth, by engaging in prohibited transactions with Fulbright attorneys through unreasonable compensation for legal services "unnecessary" to the administration of the plan.

The district court rejected each of the five theories and plaintiff's other ERISA-based theories of prohibited party-in-interest transactions, deliberate deception, and interferences with protected rights. Accordingly, the court denied plaintiff's motion, and granted defendant's motion. It taxed the cost of the special masters to Adair and ordered the parties otherwise to bear their own costs.

## II.

We review a summary judgment *de novo* and affirm if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Ramirez v. City of San Antonio*, 312 F.3d 178, 181 (5th Cir. 2002). An issue of fact is material only if its outcome would affect the outcome of the case. *Id.* We draw all reasonable inferences in favor of the nonmoving party, who in this case is the plaintiff. *Id.* We review the district court's procedural decisions for abuse of discretion. *Celestine v. Petroleos de Venezuela, S.A.*, 266 F.3d 343, 349 (5th Cir. 2001).

## III.

Irrespective of whether plaintiff established the elements of a claim under 29 U.S.C. § 1132(c)(1) for Adair's failure to provide requested information to her as a beneficiary of the trust, the district court was correct in concluding that her claim is barred by a two-year statute of limitations. ERISA does not explicitly provide a statute of limitations period for actions under § 1132(c). Because there was no Fifth Circuit authority on the issue, the district court looked to analogous Texas state law to determine the relevant limitations period. See *McClure v. Zoecon, Inc.*, 936 F.2d 777, 778 (5th Cir. 1991).

Plaintiff argued that the court should have applied either the Texas four-year statute of limitations for fraud actions or the residual four-year period for actions for which no other limitations period applies. The district court was correct in observing that a violation of § 1132 is not analogous to fraudSSwithout more, the withholding of information from a beneficiary is quite unlike defrauding a beneficiary. Despite plaintiff's assertions, the evidence does not support the conclusion that the plan administrators engaged in bad faith in withholding the information plaintiff had requested. The district court also declined to apply the Texas residual statute of limitations, adopting instead the state statute of limitations for an action for breach of fiduciary dutySSan action similar to that described in § 1132.[1]

Plaintiff also has argued that the four-year

---

[1] In Texas, there are two different limitations periods that might apply, but this court has adopted the line of cases applying a two-year tort period for claims of breach of fiduciary duty. *Kansa Reinsurance Co. v. Stewart Title Co.*, 20 F.3d 1373, 1374 (5th Cir. 1994).

3

limitations period of TEX. CIV. PRAC. & REM. CODE § 16.004(a)(5) should apply. That statute, regarding breach of fiduciary duty, became effective on August 30, 1999, some eighteen months *after* plaintiff filed the instant suit. Accordingly, that statute's limitations period is inapplicable here.

There is no evidence that plaintiff made any request for information after August 30, 1995; she sued on December 12, 1997. Accordingly, her claim is barred by the two-year statute of limitations, and we need not address the district court's ruling limiting recovery to $1 per day of violation.

## IV.

It is undisputed that Adair was plaintiff's fiduciary, but she argues that a number of other persons should also be considered her fiduciaries. Among these is Joetta Janczak, a member of the administration committee that managed the Plan. The district court declined to consider her a fiduciary of plaintiff's, based on evidence that she exercised no controlling authority over the plan and undertook only ministerial functions with respect to it.

Plaintiff contends that Janczak is a "named fiduciary" under 29 U.S.C § 1102(a)(2) and that the district court erred in accepting Janczak's testimony that her duties were "merely ministerial." ERISA deems a person a plan fiduciary to the extent that he or she "exercises any discretionary authority or discretionary control respecting management of [the] plan or exercises any authority or control respecting management or disposition of its assets," or "has any discretionary authority or discretionary responsibility in the administration of [the] plan." 29 U.S.C. § 1002(21)(A)(i), (ii). Though plaintiff claims that Janczak's "fiduciary status and liability are not dependent on her actual functions with respect to the plan," the district court correctly noted that this court has held that the "actual authority which a person exercises over a plan" is a more important factor than their organization title with respect to a plan. *See Donovan v. Mercer*, 747 F.2d 304, 308-09 (5th Cir. 1984).

The key, then, is the factual matter of whether Janczak was more than a "merely ministerial" member of the plan committee. Plaintiff notes that Janczak was extremely knowledgeable about the plan, sent letters directing distributions from the plan, and often communicated with the Fulbright attorneys about the plan. These facts, however, do not suggest that Janczak exercised a level of discretion that should be characterized as control or authority. To the contrary, these facts are quite consistent with the duties and knowledge that should be expected of a "ministerial" member of the plan committee. Janczak's testimony and other evidence support the conclusion that her duties did not relate to the substance of the management of the plan. The district court reasonably concluded that she was not plaintiff's fiduciary.

Plaintiff also argues that Adair's Fulbright attorneys should be considered her fiduciaries. She alleges something approaching a conspiratorial relationship among them, to hijack the plan and loot its assets through their control over the plan administrators. The key issue in determining whether the Fulbright attorneys were fiduciaries is the level of control the lawyers exercised over the decisionmaking. *Id.*; 29 C.F.R. § 2509.75-5. The district court held that "there is no evidence that any Fulbright & Jaworski attorney exercised control or authority over the plan at any time."

Plaintiff contends the district court ignored evidence in her favor. Particularly, she says the plan committee relied only on the advice of Fulbright lawyer Goldhor regarding the requirement of finality before payment. Fulbright lawyer Jansen, she says, had authority to determine whether the Hatteberg QDRO's were qualified under ERISA.

Certainly, Goldhor, Jansen, and other Fulbright lawyers gave advice to the plan committee, and doubtless their advice at time caused the committee to act in ways it otherwise would not have. But these activities are consistent with a normal relationship between lawyer and clientSSthe committee would not have solicited the aid of attorneys if it did not intend to act on their advice. It is unwarranted to infer from the fact that the Fulbright lawyers shaped the committee's view of their legal obligations that they became the *de facto* controllers of the plan assets, and we see no indication that the attorneys formulated any sort of scheme to loot the plan of its assets.

Plaintiff also maintained that Fulbright divorce attorneys who represented James Hatteberg should be considered fiduciaries, on the theory that they were part of the larger conspiracy among Fulbright attorneys to control the plan and loot its assets for their own use. Again, there is no evidence to support this conclusion. Accordingly, the district court acted properly in denying that the Fulbright divorce attorneys were plaintiff's fiduciaries.

Finally, plaintiff insists that James Hatteberg was one of her fiduciaries, again by virtue of exercising "de facto discretionary control and authority over the Plan's management . . ." while working in concert with the Fulbright attorneys. As the district court observed, however, James Hatteberg should not be considered a fiduciary. Although he improperly requested that the plan administrator not disclose certain information to the plaintiff, his request was not tantamount to control, even if the plan administrators eventually failed to disclose the requested information because of their mistaken understanding of ERISA's requirements.

As to the fiduciary status of Janczak, the various other Fulbright lawyers, and James Hatteberg, there remains no genuine issue of material fact to be resolved. The district court's conclusions are well reasoned.

V.

A.

The district court found no basis to believe that the plan fiduciaries managed assets so as to use them as a litigation weapon in the state court proceedings, in violation of ERISA's "exclusive purpose" and "anti-inurement" provisions. The record shows that the administrators did not illicitly "profit" from the funds, or were unreasonable administrative expenses were deducted from plan assets. Retaining the Fulbright attorneys to give advice on complex and obscure ERISA issues was reasonable. To support her arguments, plaintiff provides little more than allegations of such conspiratorial behavior. There remains no genuine issue of material fact.

B.

Plaintiff claims the plan administrators breached their fiduciary duty of prudence by failing to establish and follow reasonable QDRO procedures as required by 29 U.S.C. § 1056(d)(3). Particularly, she complains that Adair improperly delayed recognition of the disputed family court DRO as a QDRO,

5

preventing her timely receipt of benefits.

There is no requirement under ERISA, or under the plan, that an order be final before it is qualified. Though plaintiff became a fiduciary upon entry of the First QDRO, it was not established *how much* of the plan assets she was entitled to receive until the entry of the final QDRO in 1997. As the district court concluded, Adair's unnecessary delay in qualifying the domestic relations order was in good faith and, accordingly, did not constitute a breach of fiduciary duty. The record does not show otherwise, and there is no genuine issue of material fact.

### C.

Plaintiff alleges that the plan administrators engaged in a prohibited transaction when they hired Fulbright lawyers to advise the plan on various legal matters. Title 29 U.S.C. § 1106-(a)(1)(c) prohibits a plan fiduciary from causing a plan to engage in transactions that allow the furnishing of services between the plan and a party in interest. Reasonable arrangements for legal and other services necessary to operate the plan are excepted, however, if the compensation paid is reasonable. 29 U.S.C. § 1108(b)(2).

The district court properly found that the $6,389.35 paid to the Fulbright attorneys by the plan was a reasonable fee for legal research services necessary to the operation of the plan. Certainly, it does not seem an excessive fee, considering ERISA's complexities.

As part of her claim of "prohibited transactions" between the administrators and the Fulbright lawyers, plaintiff alleges that the Fulbright lawyers operated primarily to control the assets of the plan for their own interests. There is no substantial evidence for this ac-cusation, so there is no genuine issue of material fact.

### D.

Plaintiff argues that because the plan documents provided to her did not address whether plan expenses were to be deducted from plan assets, the administrators were prohibited from making expense deductions. Administrators are required under ERISA to operate a plan in accordance with its written terms. In this case, however, the plan was amended, as allowed under its original terms, so as to permit expense deductions. Accordingly, it was within the terms of the Plan to deduct expenses from assets at the time when the administrators did so.

The district court also noted, convincingly, that the passthrough amendment did not reduce plaintiff's vested benefit account, so it did not thereby violate the anti-cutback provisions of ERISA; the expenses were paid before earnings and losses were allocated to individual accounts. Accordingly, there is no genuine issue of material fact.

### VI.
### A.

As we have said, plaintiff asserts defendants engaged in transactions for parties-in-interest in violation of 29 U.S.C. § 1106(b). She also argues that even if James Hatteberg and the Fulbright attorneys advising the plan are not fiduciaries, she has a claim against them for engaging in party-in-interest transactions under § 1132(a)(3).

Again, plaintiff argues that the Fulbright divorce attorneys' representation of James Hatteberg, while other Fulbright attorneys advised the plan, constitutes a transaction prohibited by 29 U.S.C. § 1106. As noted, under 29

6

U.S.C. § 1108(b)(2), there is a safe harbor from § 1106 for provision of legal services, such as those provided by the Fulbright lawyers to the administrators, so long as no more than reasonable compensation is paid. The district court observed that there was no evidence of a legal or ethical conflict of interest in the administrators' retention of the Fulbright attorneys, nor that unreasonable compensation was paid to them. Even if, under *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 645 (5th Cir. 1992), plaintiff was one of Fulbright's clients for purposes of providing ERISA advice to the plan, the record does not support a finding of a conflict of interest. As the district court noted, there services were very "limited" and the lawyers were not unreasonably compensated. There is no genuine issue of material fact.

### B.

Plaintiff alleges "deliberate deception" by a fiduciary under *Varity v. Howe*, 516 U.S. 489 (1996), in which the Court held that an employer acted as a fiduciary and breached its fiduciary duties when it made false representations to participants in its ERISA plan about the security of transferring their accounts. Plaintiff claims *Varity* is applicable to the facts of this case. *Varity*, *id.* at 502-03.

The district court held that plaintiff had not established that the plan administrators made misrepresentations to plaintiff to induce material reliance. Plaintiff complains, however, that a joint account was not created and that plan administrators lacked knowledge about certain intricacies of the plan.

If these facts are true and constitute failings, they are not *deliberate deceptions* under *Varity*, in which the court required "lying" and "deceiving" in order to premise liability. *Id.* at 506. Plaintiff's inference that the plan's fiduciaries and parties-in-interest intentionally engaged in a plan of deception to enrich themselves is not supported by evidence. Moreover, the *Varity* theory is inapplicable to any of the Fulbright attorneys or Janczak, because they were not plaintiff's fiduciaries. *See id.* at 492. Accordingly, there is no material issue of fact.

### C.

Plaintiff presses a claim for "interference with protected rights" under 29 U.S.C. § 1140. In a § 510 action, usually brought by an employee against an employer, a plaintiff must show intent to discriminate. This court has applied § 510 outside the employer-employee context since deciding *Lynn v. Lynn*, 25 F.3d 280, 284 (5th Cir. 1994). A plaintiff must offer evidence from which it can be inferred that defendant intended to discriminate against him in realizing benefits under a plan. *Id.*

Plaintiff contended that Adair's opposition to her interests during the contested state proceedings surrounding the first QDRO constituted "discrimination against a participant or beneficiary for exercising any right to which [she] is entitled under the provisions of an employee benefit plan." The district court observed, however, that throughout the litigation, plaintiff was not in fact forced to relinquish any rights, but was fully entitled to, and did avail herself of, the state appellate system to challenge the trial court's calculation of her entitlements in the first QDRO. Adair's trial strategy in actively opposing plaintiff's motion and appeals in state court litigation does not constitute a violation of § 1140. As the district court noted, the state court litigation process and settlement negotiations are not topics properly reviewed under ERISA. *See Matassarin v. Lynch*, 174

F.3d 549, 569 (5th Cir. 1999).

## VII.
### A.
Plaintiff complains that her non-ERISA claims were severed from the other proceedings, including her claims asserted under the Racketeer Influenced and Corruption Organization Act and her claims based on theories of negligent misrepresentation, legal malpractice, and abuse of process. The court found that "these claims, while each relying on the same general facts, are separate and distinct from the remaining claims asserted under" ERISA. Indeed, they are.

The non-ERISA claims are quite different in purpose and content from the ERISA claims. In a case already complicated by diverse and difficult issues of ERISA law, it was no abuse of discretion for the district court to deal with plaintiff's non-ERISA claims separately.

### B.
As the district court noted, this case "involves a myriad of issues with each being briefed in exhaustive detail by the parties." To bring focus to the case, the court appointed two special masters with expertise in ERISA law, pursuant to FED. R. CIV. P. 53.

Plaintiff contends the appointment of special masters was unnecessary, because the "facts and law on her ERISA claims were clear," and the appointment would lead to "unwarranted delay and expense." But even a short reading of the issues in the case reveals that it revolves around difficult and unfamiliar areas of law.

Plaintiff also avers that the special masters were in some way suborned and insinuates that the extensive redrafting of the masters' report was undertaken at the improper urging of the district court, which, she states, intended to undermine the neutrality of the report. More likely, the need to redraft was caused by the difficulty of the ERISA issues in the case. It was no abuse of discretion to appoint and rely on special masters here.

### C.
The district court made its inquiry concerning retention of counsel after the masters' report raised the possibility that plaintiff might prevail on some issues. Plaintiff indicated a willingness to secure counsel at an appropriate time, and the court directed her to do so. She asserted no opposition to the order at the time and did indeed retain counsel. She eventually terminated counsel and resumed representing herself *pro se* after complaining that she was short of funds to support a separate attorney.

Plaintiff avers that when she failed to object to the order to retain legal counsel, she had been led to believe by the district court that she might succeed on some issues and that the court intended to order mediation. That these hopes were disappointed apparently forms the basis of her objection to the order to retain counsel. The order, a reasonable response to reports from the special masters, was no abuse of discretion.

### D.
ERISA provides that in "any action . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Plaintiff argues that the refusal to allow her to recover her attorneys' fees was an abuse of discretion.

8

She notes that she *did* prevail on her initial claim for clarification and enforcement of her right to a qualified domestic relations order and a distribution. Indeed, this issue was the core of the disagreement between her and the defendants, though it was far less an issue in federal district court than at the state level and throughout the mediation process.

Defendants note that plaintiff's few successes in the course of the litigation occurred while she was working *pro se*, so they urge that, as in *Matassarin v. Lynch*, 174 F.3d 549, 570 (5th Cir.1999), no attorneys fees should be due a *pro se* litigant. There was no abuse of discretion in denying fees.

Plaintiff urges, however, that the district court improperly failed to consider the five "*Bowen* factors" to be applied in awarding fees in ERISA disputes. *See Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1265-66 (5th Cir. 1980). Plaintiff claims that consideration of the *Bowen* factors is mandatory in the Fifth Circuit. In *Riley v. AMR Corp. Subsidiaries Supersaver 401(k) Capital Accumulation Plan*, 209 F.3d 780, 781-82 (5th Cir. 2000), we wrote that a court "should consider and explicate the five *Bowen* factors, and should do so without giving predominance or preclusive effect to any one of them . . . ." Nothing in *Bowen* requires, however, that a court *must*, in every case, elaborately and explicitly run its fact pattern through the five factors in its written opinion, especially where a litigant has achieved as little success as has this plaintiff. Furthermore, plaintiff contributed substantially to the prolongation of the litigation process by aggressively pursuing appeals.

E.

The district court denied plaintiff's recusal motion. It looked unfavorably on her arguments that the court was biased, noting that she had "quoted isolated words and phrases from various orders entered in this action to date, arguing the forceful language used by the Court shows bias or prejudice against the subject matter of her claims, extreme favorable predisposition to the Fulbright Defendants, and undeserved and excessive bias against the Plaintiff." Plaintiff again quotes isolated words of the court, where it characterized several of her factual and legal arguments as "unnecessarily abusive and insulting," "unsupported personal venom," "disrespectful and unprofessional," and "outrageous, frivolous, and completely unsupported." Plaintiff seems especially exercised that the court characterized her divorce proceedings as "bitter and acrimonious" and urged her and James Hatteberg to "put to rest the parties' divorce" and avoid turning the proceedings into a "post-mortem" of the divorce.

There is, however, no good evidence that the court was biased against plaintiff or the subject matter of her claims. Although the court apparently showed irritation with a number of plaintiff's arguments and accusations, the court's characterizations of her conduct had some foundation. The court lacked the "deep-seated favoritism and unequivocal antagonism that would render fair judgment impossible" and make recusal appropriate. *Liteky v. United States*, 510 U.S. 540, 555 (1994); *see also Matassarin*, 174 F.3d at 571.

F.

After lengthy discovery, the district court concluded that there had been "more than adequate time for discovery." It overruled plaintiff's requests for unlimited discovery. She, however, still wanted documents relating

9

to the Fulbright attorneys' legal advice to James Hatteberg with respect to the divorce proceedings. Plaintiff also sought assorted other documents she insists were relevant to appropriate statutory penalties under § 1132 and to her allegations of self-dealing, breaches of fiduciary duty, and interferences with Hatteberg's rights under ERISA. In short, she argued that further discovery was necessary with regard to the bulk of her case.

The district court was in a good position to decide whether further discovery was needed. The record is voluminous and detailed and is additionally enriched by the analysis of the special masters. The court was within its discretion to bring an end to discovery.

AFFIRMED.