# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-30044

United States Court of Appeals
Fifth Circuit

**FILED**

November 16, 2015

Lyle W. Cayce
Clerk

CAROLE K. BROWDY, Medical Doctor,

      Plaintiff - Appellant

v.

HARTFORD LIFE & ACCIDENT INSURANCE COMPANY; GROUP
SHORT TERM DISABILITY AND LONG TERM DISABILITY PLAN FOR
EMPLOYEES OF AEROSPACE TESTING ALLIANCE-SALARIED,

      Defendants - Appellees

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:11-CV-818

Before STEWART, Chief Judge, and BARKSDALE and PRADO, Circuit
Judges.

PER CURIAM:*

      For this action under the Employee Retirement Income Security Act
(ERISA), 29 U.S.C. § 1001 *et seq.*, primarily at issue is whether, based on a
discrepancy concerning an employee's termination date, a disability-plan
administrator's initial denial of benefits (ultimately, the benefits were

---

      * Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5th Cir.
R. 47.5.4.

No. 15-30044

approved), constitutes a misrepresentation and resulting breach of fiduciary duty. In district court, both sides moved for summary judgment. Challenging the summary judgment awarded Hartford Life and Accident Insurance Company, as well as seeking summary judgment in her favor, Carole K. Browdy maintains the court erred, *inter alia*, in: applying the breach-of-fiduciary duty standard; and determining Hartford's actions did not constitute an actionable misrepresentation. AFFIRMED.

I.

Browdy was employed as a physician for Comprehensive Occupational Resources, L.L.C. (CORE), a sub-contractor of Aerospace Testing Alliance (ATA). CORE provided short-term and long-term disability (STD and LTD, respectively) coverage through a plan issued by Hartford, whose role under the plan was both administrator and insurer. Therefore, for a disability claim, Hartford was responsible for both determining whether benefits should be awarded and making any required payment.

In August 2007, CORE terminated Browdy's contract, and informed her that her last day of employment would be 5 September 2007. On 30 August, however, Browdy advised CORE she had to leave work indefinitely due to chronic health issues; she did not return after that day. Hartford does not contest the extent of Browdy's disability at the time, which was severe and included: degenerative disc disease; arthritis; morbid obesity; sleep apnea; asthma; migraines; pituitary issues; and anemia.

Browdy applied for disability on 5 September 2007, and requested benefits from 31 August 2007 forward. Hartford's records initially listed Browdy's last day of work as 30 August 2007, and her date of disability as 31 August 2007. It preliminarily awarded benefits through 14 September 2007, but required additional medical and employment information before approving payments beyond that date. In January 2008, Hartford spoke with ATA's

No. 15-30044

human-resources representative, who stated Browdy's termination date was 31 August 2007.

In February 2008, Hartford denied STD benefits based on Browdy's last day of work at CORE being 30 August 2007, but her date of disability being the next day. In a letter stating the reasons for the denial, Hartford referenced its above-described January 2008 telephone conversation with ATA; and, it cited a portion of the plan entitled "When does your insurance terminate?", which stated, in relevant part:

> Your insurance will terminate on the earliest of:
> . . .
> 5.  the date on which you cease to be an Active Full-time Employee in an eligible class, including:
>> a)  temporary layoff;
>> b)  leave of absence; or
>> c)  work stoppage (including a strike or lockout); or
>> d) the date your Employer ceases to be a Participant Employer, if applicable.

Based on this, Hartford stated: "Since you were not an active employee at the [ ] time you became disabled on [31 August 2007], you are not [eligible] to receive short term disability". It requested repayment of its preliminary-benefits award, and informed Browdy she had 180 days to appeal its decision.

Browdy did not appeal promptly. In August 2008, according to Browdy's subsequent contested declaration in district court, discussed *infra*, she both sold stock at a loss to cover expenses and applied for early benefits from her pension plan with Dow Chemical Company, her previous employer. Browdy maintains the pension's value was permanently reduced due to that early withdrawal. That same month, prior to the expiration of the 180-day deadline, Browdy retained counsel and informed Hartford of her intent to appeal. Following several extensions of the deadline at Browdy's request, she appealed in October 2008, eight months after Hartford's denial-decision.

No. 15-30044

According to Hartford's records, in considering Browdy's administrative appeal, Hartford telephoned ATA that December to verify the date of her termination. ATA's human-resources representative confirmed: her employment was terminated on 31 August 2007; and the decision was mutual, because CORE could not accommodate Browdy's worsening medical condition. ATA's representative advised, however, that there was no documentation to verify this arrangement. In the light of this, Hartford's claims examiner acknowledged: "[A]lthough [Browdy's] employer certifies that [Browdy's] employment terminated [on 31 August 2007], there are no records on file or available that would confirm a termination prior to [5 September 2007]". As a result, the examiner stated it was "reasonable" to conclude Browdy was still covered under the terms of the policy as of 31 August 2007, her date of disability. Accordingly, in a 9 December 2008 letter, Hartford informed Browdy it would reverse its prior decision and award STD benefits from her date of disability. Browdy received payment of her STD benefits in February 2009.

In January 2009, in support of her LTD claim, Browdy submitted information concerning her medical condition, retirement, and pension benefits. The documents included a questionnaire, on which Browdy checked a box indicating she was currently receiving retirement or pension benefits. At the bottom of the form, Browdy advised: the pension was from Dow Chemical; and she received $4,634.58 monthly.

In April 2009, Hartford granted Browdy's LTD claim, and approved benefits for 24 months, starting from 14 December 2007. That June, Hartford requested further documentation to determine whether Browdy could receive LTD benefits beyond the initial 24-month period. Four months later, Hartford requested Browdy repay $64,884.12 in "overpaid" benefits. Hartford based its decision on Browdy's August 2008 election to make withdrawals from her Dow

4

pension, viewing those pension payments as "Other Income Benefits", which, pursuant to the policy, should have offset the LTD benefits she received. Hartford advised it would not make further payments until Browdy repaid the entire sum. Browdy appealed Hartford's decision, maintaining the only reason she made those pension-plan withdrawals was because Hartford initially denied her STD benefits, leaving her without income. Hartford denied the appeal.

Browdy filed this action under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) (civil action to recover benefits under terms of plan). She contended, *inter alia*, that Hartford: breached its fiduciary duty; acted in bad faith; and was unjustly enriched by offsetting her LTD benefits. Browdy sought: a ruling her pension withdrawals did not offset her LTD benefits; Hartford's being required to pay retroactively any benefits it reduced for that reason; and being awarded other damages, such as compensation for her reduced retirement benefits, lost property value, and lost investments. Both sides moved for summary judgment.

In district court, as an exhibit to her statement of undisputed material facts for the summary-judgment cross-motions, Browdy submitted a declaration, maintaining the only reason she made withdrawals from her Dow pension was because of Hartford's denial of her STD benefits. In response, Hartford moved *in limine* to exclude portions of Browdy's statement of material facts and declaration. Along that line, Hartford disputed Browdy's statements concerning her early withdrawal of pension funds, contending they were "unsubstantiated, conclusory and speculative".

In addition, Hartford asserted in its brief in support of summary judgment that Browdy could not pursue her breach-of-fiduciary-duty claim under § 502(a)(1)(B), contending that section provided only for recovery of benefits due under the plan, and did not contemplate extra-contractual

damages.  Browdy conceded this point in her response brief.  Moreover, in her brief in support of her summary-judgment motion, she conceded:  "Hartford actually paid [her] the benefits for which she was entitled under the plan".  For the first time, in her response brief in opposition to Hartford's summary-judgment motion, she asserted her claim could proceed under § 502(a)(3), 29 U.S.C. § 1132(a)(3) (civil action to "obtain other appropriate equitable relief").  In its response brief to Browdy's summary-judgment motion, Hartford objected to her re-characterization of her claim as being both duplicative and untimely.

Summary judgment was awarded Hartford.  *Browdy v. Hartford Life & Accident Ins. Co.*, C.A. No. 11-818, 2014 WL 5500392 (M.D. La. 30 Oct. 2014).  In doing so, however, the district court rejected Hartford's assertion that, because it was not pleaded in her complaint, Browdy could not abandon her § 502(a)(1)(B) claim and proceed under § 502(a)(3).  *Id.* at *6.  On the other hand, the court stated it was "inclined to agree" that Browdy was attempting to re-package her § 502(a)(1)(B) claim as a duplicative § 502(a)(3) claim.  *Id.*  Nonetheless, "out of an abundance of caution", it analyzed Browdy's § 502(a)(3) fiduciary-duty claim.  *Id.*  Although the court concluded Hartford was a fiduciary, it held Hartford did not breach any duty to Browdy because it did not make a bad-faith and intentional misrepresentation.  *Id.* at *6–8.  The court cited evidence Hartford had initially denied Browdy's STD claim due to a misunderstanding about the end-date of Browdy's employment, but had reversed its decision when it received new information.  *Id.* at *8.

In addition, the court rejected Browdy's contention that Hartford's actions were motivated by its conflict of interest as both plan administrator and insurer.  *Id.* at *10.  It similarly rejected Browdy's assertion that Hartford was unjustly enriched by off-setting her LTD benefits with her Dow pension payments, because the plan provided for the offset, and no evidence in the record showed Hartford knew about Browdy's pension plan when it denied her

No. 15-30044

STD benefits in February 2008. *Id.* Moreover, the court concluded Browdy could not recover for Hartford's failure to timely approve her benefits, and determined ERISA preempted Browdy's state-law claims. *Id.* at *10–11. Finally, it dismissed Browdy's claims against the plan itself because she abandoned them. *Id.* at *11. Browdy's motion for reconsideration was denied on 18 December 2014.

## II.

In challenging the summary judgment awarded Hartford, as well as seeking its being awarded to her, Browdy contends the court erred by: articulating the breach-of-fiduciary-duty standard as one of bad faith; ruling she presented no facts in support of misrepresentation; and failing to consider Browdy's evidence in a cumulative fashion. Hartford reiterates, *inter alia*, that Browdy's claim is foreclosed because she impermissibly re-packaged her original § 502(a)(1)(B) claim as one under § 502(a)(3). We need not reach Hartford's contention because, even assuming, *arguendo*, Browdy's claim may be considered under § 502(a)(3), summary judgment for Hartford was proper. Similarly, because Browdy presented no evidence of misrepresentation constituting a breach of fiduciary duty, we need not reach her assertions concerning the court's claimed improper application of a bad-faith standard.

An ERISA summary judgment is reviewed *de novo*, applying the same standards as the district court. *Cooper v. Hewlett-Packard Co.*, 592 F.3d 645, 651 (5th Cir. 2009). A movant is entitled to summary judgment if she shows "there is no genuine dispute as to any material fact" and she "is entitled to judgment as a matter of law". Fed R. Civ. P. 56(a). In general, "[t]he party seeking summary judgment bears the burden of demonstrating an absence of evidence to support the non-movant's case". *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Once the movant shows that no genuine [dispute] of material fact

exists, the burden shifts to the nonmovant to set forth specific facts to establish a genuine [dispute] of material fact, without merely resting on allegations and denials." *Id.*

"When parties file cross-motions for summary judgment, we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 329 (5th Cir. 2014). Each motion is, of course, reviewed *de novo*. *E.g.*, *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 213 & n.1 (5th Cir. 1999).

This being an ERISA action, the applicable underlying ERISA standard of review (ERISA standard) informs our *de novo* review of the summary-judgment motions. *See Barhan v. Ry-Ron Inc.*, 121 F.3d 198, 201–02 (5th Cir. 1997). Were this treated as a § 502(a)(1)(B) action, as Hartford contends, the ERISA standard for Hartford's denial of benefits would be abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (denial of benefits claim under § 502(a)(1)(B) reviewed *de novo*, but, if plan affords administrator discretion to determine benefits eligibility, a more deferential standard applies).

But, as stated *supra*, Browdy's claims will be analyzed under § 502(a)(3). Although *Firestone* concerned a denial of benefits under § 502(a)(1)(B), some courts of appeals have extended its application of a deferential standard of review to § 502(a)(3) claims. *See Admin. Comm. of Wal-Mart. Assocs. Health & Welfare Plan v. Willard*, 393 F.3d 1119, 1123 (10th Cir. 2004); *Bd. of Admin. v. Huntsman*, 187 F.3d 634 at *3 (6th Cir. 1999) (unpublished). Those decisions, however, did not concern a § 502(a)(3) breach-of-fiduciary-duty claim, such as Browdy's. *See Willard*, 393 F.3d at 1122–23 (distinguishing matter from breach-of-fiduciary-duty claim where *de novo* standard applied). Therefore, the ERISA standard for determining whether Hartford breached its

No. 15-30044

fiduciary duty is *de novo*, the same as the controlling standard for reviewing the cross-motions for summary-judgment.

A.

Regarding Browdy's assertion that the district court applied an incorrect breach-of-fiduciary-duty standard, ERISA § 502(a)(3) permits a civil action "by a participant, beneficiary, or fiduciary [ ] to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or [ ] to obtain other appropriate equitable relief [ ] to redress such violations or [ ] to enforce any provisions of this subchapter or terms of the plan". 29 U.S.C. § 1132(a)(3). ERISA imparts the same standards of conduct upon fiduciaries as does the common law of trusts. *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Accordingly, a plan administrator must discharge his duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims". *Id.* at 412; 29 U.S.C. § 1104(a)(1)(B).

Conduct typically constituting a plan administrator's breach of fiduciary duty includes deceptive practices or misrepresentations. *Bodine v. Emp'rs Cas. Co.*, 352 F.3d 245, 251 (5th Cir. 2003) (citing *Varity Corp. v. Howe*, 516 U.S. 489 (1996)). Therefore, if a fiduciary makes a statement concerning the future of a participant's plan benefits, it has a duty to refrain from making misrepresentations. *Martinez*, 338 F.3d at 424. It stands that "[l]ying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1) of ERISA". *Varity*, 516 U.S. at 506 (alteration in original). Such deceptions include knowing and significant falsehoods committed in order to save money at a beneficiary's expense. *Id.*; *Martinez*, 338 F.3d at 425.

9

No. 15-30044

In practical application, misrepresentations typically concern the failure of a plan administrator to communicate key plan terms to a beneficiary. *See CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011); *Martinez*, 338 F.3d at 424–25.

In her briefs here, Browdy asserts Hartford's actions amounted to a breach of fiduciary duty, but does not specify whether that claimed breach was a violation of the duty of loyalty or of care. Based upon her contentions (which are premised on her belief that Hartford denied her STD benefits in an attempt to unjustly enrich itself), Browdy is articulating a breach of the duty of loyalty. In so doing, Browdy concedes in her reply brief that mere negligence is insufficient to establish that type of breach of fiduciary duty. *See Hobbs v. Baker Hughes Oilfield Operations, Inc.*, 294 F. App'x 156, 158 (5th Cir. 2008) (citing *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 642 (7th Cir. 2004)). Examples of such negligence include clerical oversights. *See id.* (citing *Bodine*, 352 F.3d at 251). In the light of Browdy's concession, and her breach of the duty of loyalty contention, we need not consider whether other types of breach-of-fiduciary-duty claims (duty of care) may be premised on a fiduciary's negligence. Moreover, as discussed *infra*, Browdy fails to present evidence of any negligent conduct by Hartford.

1.

Browdy's characterization of her claim is somewhat contradictory. On the one hand, she maintains: the issue is one of breach of fiduciary duty, actionable under § 502(a)(3); and Hartford's denial of benefits *alone* constitutes the misrepresentation. Browdy, however, does not point to any precedent in support of this assertion, or how it would affect the fiduciary-duty standard, nor have we found any. In so doing, she concedes, as she did in district court, that her claim cannot be pursued under § 502(a)(1)(B) (civil action to recover benefits under terms of plan). On the other hand, the very essence of her position is that Hartford ignored the information in its possession and initially

No. 15-30044

wrongfully denied her STD benefits, which is necessarily a § 502(a)(1)(B) matter.  As discussed *supra*, although Hartford urges us, in the light of *Amara*, to conclude Browdy's § 502(a)(3) claim is nothing more than an impermissibly re-packaged § 502(a)(1)(B) claim, we need not consider this contention.  Again, even assuming, *arguendo*, Browdy presented a proper breach-of-fiduciary-duty claim under § 502(a)(3), summary judgment for Hartford was proper.

2.

Additionally, Browdy contends the court incorrectly articulated the fiduciary-duty standard as requiring bad faith; Hartford urges otherwise, citing, *inter alia*, the Seventh Circuit's decision in *Vallone*, 375 F.3d at 623.  As discussed *infra*, however, Browdy presents no evidence of a misrepresentation. Accordingly, as stated *supra*, we need not reach whether bad faith is required.

B.

For her other issue, Browdy maintains the court erred in ruling she failed to present facts in support of her claim.  Prior to determining that issue in the light of the articulated fiduciary-duty standard, we must address Hartford's contentions concerning claimed deficiencies in both Browdy's complaint and her declaration in support of her statement of undisputed material facts.

1.

At oral argument here, Hartford raised two points concerning Browdy's district-court papers.  First, it contended this action should be barred because she changed the nature of relief sought (from § 502(a)(1)(B) to § 502(a)(3)) at the summary-judgment stage, but without amending her complaint.  Second, it reiterated the objections it raised in district court about Browdy's declaration.  For the following reasons, both contentions are waived.

No. 15-30044

a.

Although Hartford contended in district court that Browdy's belated re-characterization of her claim, without leave to amend, barred this action, it did not make that contention in its brief here.  Generally, "a party waives any argument that it fails to brief on appeal". *United States v. Whitfield*, 590 F.3d 325, 346 (5th Cir. 2009).  An exception exists, however, where failure to consider the non-briefed issue would result in a miscarriage of justice.  *Id.* Failure to consider Hartford's assertion would not result in such a miscarriage because the judgment in its favor is affirmed.

b.

Hartford moved *in limine* that the district court not consider portions of Browdy's declaration in deciding the cross-motions for summary judgment. The court awarded summary judgment to Hartford; but, in doing so, did not rule on the merits of its motion *in limine.  See Browdy*, 2014 WL 5500392.  At oral argument here, Hartford noted the motion was denied as moot; in that regard, "[t]he denial of a motion by the district court, although not formally expressed, may be *implied* by the entry of a final judgment".  *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (emphasis in original).  But, Hartford did not contend, in its brief here, that the court's denial of the motion was in error.

2.

Turning to our *de novo* review of Browdy's claim, she fails to demonstrate the requisite genuine dispute of material fact for the summary judgment awarded Hartford.  As noted above, although Browdy characterizes Hartford's conduct as a breach of fiduciary duty, she at times treats her claim as one for wrongful denial of benefits.  For example, she cites our court's decision in *Schexnayder v. Hartford Life & Accident Insurance Co.* for the proposition that Hartford's internal conflict of interest as plan administrator and insurer

motivated it to make a misrepresentation to enhance its profits. 600 F.3d 465, 469–70 (5th Cir. 2010). *Schexnayder*, however, concerned the administrator's decision to terminate benefits, not a misrepresentation. *See id.* at 467–68.

This notwithstanding, Browdy maintains a breach of fiduciary duty is illustrated by Hartford's: disregarding evidence of her disability in order to avoid paying benefits (ostensibly due to its conflict of interest); fabrication of a dispute over the end-date of her termination to justify withholding payment; and taking longer than allowed to decide her claim. She additionally contends, without citing relevant authority, that the court erred by considering her above positions in an isolated fashion, as opposed to viewing them as part of a single course of conduct (cumulative contention).

A review of the administrative record undercuts Browdy's position. Her Hartford claim-file notes: Browdy's last day worked was 30 August 2007; according to ATA, her termination date was 31 August 2007; and, her claimed date of disability was 31 August 2007. Pursuant to the policy, Browdy's coverage terminated when she ceased work as an "Active Full-time Employee". Because Hartford determined initially that Browdy was not an active employee as of 31 August 2007, the same day as her date of disability, it denied her STD claim. Following Browdy's appeal from that denial, ATA confirmed Browdy's termination date was 31 August 2007, but stated there was no supporting documentation. Therefore, Hartford concluded: although ATA reiterated Browdy's termination date was 31 August 2007, the lack of documentation meant it was reasonable to conclude she was still employed through 5 September 2007, the date of her original termination letter.

Nothing about the above scenario creates a genuine dispute of material fact regarding a misrepresentation by Hartford, or its failure to exercise the earlier discussed "care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with

such matters would use in the conduct of an enterprise of a like character and with like aims". *Martinez*, 338 F.3d at 412.  Furthermore, as noted *supra*, although Browdy extensively briefs what she maintains is the appropriate fiduciary-duty standard, she fails to cite any precedent in support of her assertion that Hartford's denial of benefits alone constitutes a misrepresentation.  As Browdy concedes, as discussed *supra*, mere negligence is insufficient to support her breach-of-fiduciary-duty claim (again, she frames her claim as a violation of the duty of loyalty).  *Hobbs*, 294 F. App'x at 158. Regardless of the posture of Browdy's claim, she fails to demonstrate a genuine dispute of material fact on whether Hartford's actions were anything but reasonable.

Therefore, despite Browdy's assertions that Hartford perpetrated a scheme to unjustly enrich itself at her expense, no genuine dispute of material fact exists to preclude summary judgment against her misrepresentation claim.  Further, although Browdy notes Hartford took longer than the 105 days required by law to issue a decision, *see* 29 C.F.R. § 2560.503–1(f)(3), she offers no explanation for why she did not promptly appeal, choosing instead to withdraw from her pension and appeal nearly eight months after Hartford's decision.  Finally, as to Browdy's cumulative contention, she cites no precedent to support how several deficient contentions, when viewed together, entitle her to relief.

Contrary to Browdy's contentions, and as Hartford persuasively noted at oral argument, its conduct appears to reflect how, in reversing its claim denial, a properly-functioning administrative-appeal process should work.  A determination, as Browdy urges, that reversal of a benefits-denial alone constitutes a misrepresentation, warranting extra-contractual damages, would, *inter alia*, remove any incentive for plan administrators to reconsider prior decisions adverse to a claimant.

No. 15-30044

III.

For the foregoing reasons, the judgment is AFFIRMED.